DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Steven A. Daugherty
Assistant Attorney General
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501
Ph: (907) 269-5232
Fax: (907) 279-2834
Email: steven_daugherty@law.state.ak.us

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, ) | |
| ) | Case No._____ |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MITCH DEMIENTIEFF, Chairman, ) | |
| FEDERAL SUBSISTENCE BOARD, ) | |
| P. LYNN SCARLETT, Acting ) | |
| Secretary of the Interior, ) | |
| MIKE JOHANNS, Secretary of the U.S. ) | |
| Department of Agriculture, ) | |
| [each in their official capacity] ) | |
| ) | **COMPLAINT FOR DECLARATORY** |
| Defendants. ) | **AND INJUNCTIVE RELIEF** |

Plaintiff, State of Alaska, for causes of action against the Defendants, alleges as follows:

## JURISDICTION

1. This Complaint arises under the Alaska National Interest Lands Conservation Act of 1980, Title 16 U.S.C. § 3101 et seq. (hereinafter "ANILCA") and the Administrative Procedure Act, Title 5 U.S.C. § 702, (hereinafter "APA") as more fully appears below.

## PARTIES

2. Plaintiff, the State of Alaska, was admitted to the Union on January 3, 1959 on an equal footing with other States in all respects. Sec. 1 Pub. L. 85-508, 43 U.S.C. note prec. §21. Alaska exercises its sovereign authority over regulation of fish and game to regulate the taking of fish and wildlife within the State, including fish and wildlife on Federal Lands.  The State of Alaska is required by Article VIII, Section 2 of its constitution to manage all natural resources, including wildlife, for the maximum benefit of its people.  The State of Alaska is further required under Article VIII, Section 4 of its constitution to manage wildlife on the sustained yield principle.

3. Defendant Mitch Demientieff is the Chairman of the Federal Subsistence Board (hereinafter "Board") and is sued in his official capacity.

4. Defendant P. Lynn Scarlett is the Acting Secretary of the U.S. Department of the Interior and is sued in her official capacity.

5. Defendant Mike Johanns is the Secretary of the U.S. Department of Agriculture and is sued in his official capacity.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391(e).

## INTRODUCTION

7. This is a civil action for declaratory and injunctive relief from a May 3, 2005, decision of the Board expanding the customary and traditional use determination for residents of Chistochina for moose to include all 10,000 square miles of Game Management Unit 12. Harvest data provided evidence of use of only a very small portion of the unit (approximately

206 square miles). All documented use areas, including historical and cultural sites, could have been encompassed within less than a quarter of the unit (approximately 2,500 square miles). The State of Alaska requested that the Board extend the customary and traditional use determination to only those parts of the unit where use was documented.

8. The customary and traditional use determination for residents of Chistochina for moose, published at 70 Fed. Reg. 36268, 36274 (June 22, 2005), is arbitrary and capricious, is not supported by substantial evidence, is inconsistent with ANILCA, and is likely to cause unnecessary restrictions on nonsubsistence uses.

9. The State's timely request for reconsideration, filed under 36 C.F.R. § 242.20 and 50 C.F.R. § 100.20, on August 18, 2005, (Exhibit A) was rejected by the Board on January 17, 2006 (Exhibit B).

## STATUTORY AND REGULATORY BACKGROUND ALLEGATIONS

10. Congress enacted ANILCA in 1980. Pub.L. 96-487 (1980) (codified as 16 U.S.C. §§ 3101, et seq.).

11. Sections 801 and 802 of Title VIII of ANILCA (16 U.S.C. § 3111 – 3112) provide for the "continuation of subsistence uses" by rural residents (Native and Non-Native) by making "subsistence uses" of fish and wildlife resources the "priority consumptive use" on "public lands" in Alaska.

12. "Subsistence uses" are defined in section 803 of ANILCA (16 U.S.C. § 3113) to mean "**customary and traditional uses** by rural Alaska residents of wild, renewable resources. . ." (emphasis added).

13. The phrase "customary and traditional uses" is not defined within ANILCA.

14. The phrase "customary and traditional use" is defined by the Board's regulations at 50 C.F.R. § 100.4 and 36 C.F.R. 242.4 to mean "a long-established, consistent pattern of use, incorporating beliefs and customs which have been transmitted from generation to generation. This use plays an important role in the economy of the community."

15. The Board's regulations regarding customary and traditional use determinations, at 50 C.F.R. § 100.16(a) and 36 C.F.R. § 242.16(a) require the Board to "identify the specific community's or area's use of specific fish stocks or wildlife populations."

16. To support a positive customary and traditional use determination, the Board's regulations at 50 C.F.R. § 100.16(b) and 36 C.F.R. § 242.16(b) require a community or area to "generally exhibit" the following factors:

(1) A long-term consistent pattern of use, excluding interruptions beyond the control of the community or area;
(2) A pattern of use recurring in specific seasons for many years;
(3) A pattern of use consisting of methods and means of harvest which are characterized by efficiency and economy of effort and cost, conditioned by local characteristics;
(4) The consistent harvest and use of fish or wildlife as related to past methods and means of taking; near, or reasonably accessible from, the community or area;
(5) A means of handling, preparing, preserving, and storing fish or wildlife which has been traditionally used by past generations, including consideration of alteration of past practices due to recent technological advances, where appropriate;
(6) A pattern of use which includes the handing down of knowledge of fishing and hunting skills, values, and lore from generation to generation;
(7) A pattern of use in which the harvest is shared or distributed within a definable community of persons; and
(8) A pattern of use which relates to reliance upon a wide diversity of fish and wildlife resources of the area and which provides substantial cultural, economic, social, and nutritional elements to the community or area.

17. Section 802 of ANILCA (16 U.S.C. § 3112) directs the Federal land managing agencies, except when otherwise provided under ANILCA or other Federal laws, to cooperate

with adjacent landowners and land managers, including the State of Alaska, in managing subsistence activities on the public lands and protecting the continued viability of all wild renewable resources on the public lands.

18. Section 815 of ANILCA (16 U.S.C. § 3125) provides that Title VIII of ANILCA shall not be construed as

> authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands (other than national parks and park monuments) unless necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in § 816, to continue subsistence uses of such populations, or pursuant to other applicable law.

19. Congress designed ANILCA to allow the State to establish a subsistence preference program consistent with Title VIII. If the State satisfied certain statutory criteria, the State would retain all authority over the taking of fish and wildlife on "public lands" for subsistence as well as its otherwise undiminished traditional authority to manage fish and wildlife for recreational, commercial, and other purposes on such lands. If, however, the State did not establish a statutorily satisfactory preference program, the Federal land management agencies were directed to assure that opportunity for a subsistence preference on "public lands." In this eventuality, the State would retain its traditional authority to manage fish and wildlife for recreational, commercial, and other purposes on such lands, including providing for the subsistence preference under state law.

20. Through 1989, Alaska administered a subsistence program in conformance with Title VIII. That year, in *McDowell v. State of Alaska*, 785 P.2d 1 (Alaska 1989), the Alaska Supreme Court held that the Alaska Constitution prohibited the kind of residence-based preference (e.g., preference to "rural residents") required by Title VIII. This ruling precipitated Federal intercession to administer the ANILCA subsistence preference only on "public lands."

The State continued to administer its own different subsistence preference, applicable statewide except in nonsubsistence areas, in conformance with its constitution.

21. As noted in *Ninilchik Traditional Council v. United States,* 227 F.3d 1186, 1192 (9th Cir. 2000) "ANILCA provides for a number of competing purposes, all of which must be balanced. . ."

22. For purposes of game management, under State regulations, Alaska is divided into 26 game management units. Many, but not all, of these units are divided into subunits.

23. For purposes of federal subsistence management, State game management unit and subunit boundaries are generally used. However, within units, customary and traditional use determinations and areas open to hunting under the federal subsistence regulations do not always correspond to State unit or subunit boundaries. There is no statutory or regulatory requirement for customary and traditional use determinations and areas open to hunting under the federal subsistence regulations to correspond with State unit and subunit boundaries.

24. Unit 12 is not divided into subunits under State regulations, but hunting requirements differ in portions of the unit based on geographic boundaries. 5 AAC 85.045 (10).

25. Unit 12 is not divided into subunits under the Federal regulations at 50 C.F.R. § 100.26 and 36 C.F.R. § 242.26 as reflected in the 70 Fed. Reg. 36268, 36294-95 (June 22, 2005), but hunting regulations differ in portions of the unit and some customary and traditional use determinations at 50 C.F.R. § 100.24 and 36 C.F.R. § 242.24 (70 Fed. Reg. 36268, 36273) do not apply to the entire unit.

26. Section 805 of ANILCA (16 U.S.C. § 3115) does not require the Board to follow any recommendation of a Regional Advisory Council which is not supported by substantial evidence.

27. Section 1314 of ANILCA (16 U.S.C. § 3202) provides that "[n]othing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in title VIII of this Act, or to amend the Alaska Constitution" and that "[e]xcept as specifically provided otherwise by this Act, nothing in this Act is intended to enlarge or diminish the responsibility and authority of the Secretary over the management of the public lands."

28. Section 815 of ANILCA (16 U.S.C. § 3115) does not authorize the Board to adopt a regulation that results in an unnecessary restriction on the taking of wildlife for nonsubsistence use. Restrictions on nonsubsistence use may not be adopted "unless necessary" for conservation, to continue subsistence uses of such populations, or pursuant to other law.

## SPECIFIC CLAIMS AND ALLEGATIONS

29. Chistochina is a community with approximately 93 residents, located on the Tok Cut-off of the Glenn Highway in Unit 13 within 1 mile of the boundary of Unit 11. Chistochina is approximately 37 air miles and 46 road miles from the nearest portions of Unit 12.

30. Prior to the regulatory amendments published in 70 Fed. Reg. 36268 (June 22, 2005), Chistochina residents had customary and traditional use determinations to hunt moose on federal lands under federal subsistence regulations in all of Unit 13 (approximately 23,368 square miles), all of Unit 11 (approximately 12,785 square miles), and a portion of Unit 12 (approximately 1,333 square miles). The customary and traditional use determinations totaled approximately 37,286 square miles; the regulatory amendments in 2005 expanded this area to approximately 46,153 square miles.

31. Unit 12 consists of approximately 10,000 square miles.

32. The Board considers Federal Public lands within Unit 12 to include the Wrangell Saint Elias National Park and Preserve, the Tetlin National Wildlife Refuge, and isolated parcels such as allotment lands in the northwest portion of Unit 12.

33. The State of Alaska is an adjacent landowner and land manager to federal public lands within Unit 12.

34. Board proposal WP05-21 to expand the Chistochina moose customary and traditional use determination was adopted by the Board at its May 2005 wildlife meeting, and the resulting regulatory changes were published on June 22, 2005, starting at 70 Fed. Reg. 36268.

35. At the May 2005 Board meeting, the State of Alaska provided written and oral comment on WP05-21, noting that Chistochina's customary and traditional use patterns were well-documented and recognizing that the residents of Chistochina had hunted moose in some areas of the southern part of Unit 12 for which they did not have a customary and traditional use determination. However, the State noted that no documentation was presented showing customary and traditional use in the northwestern or northeastern parts of Unit 12. The State requested that the Board limit the extension of Chistochina's customary and traditional use determination to those parts of the unit where the community had established a customary and traditional pattern of use.

36. The federal staff analysis on proposal WP05-21was based on numerous data sources including among others:  data from 1982 and 1987 Alaska Department of Fish and Game (hereinafter "ADF&G") Subsistence division household use studies described in technical reports (Stratton & Georgette 1984), other subsistence studies ( McMillian and Cuccarese 1988), Regional ethnographic overviews, and investigation reports prepared by the Bureau of Indian Affairs for sites in Unit 12 (De Laguna and McClellan 1981; Reckord 1983; BIA 1993, 1994,

1996a, 1996b); and documentation of all moose harvests throughout the State by Chistochina residents from 1991-2002 (ADF&G 2004).

37. Community resource harvest area data (1964-1984) cited by ADF&G in State comments to the Board demonstrates use of only 206 square miles of Unit 12 for moose hunting.

38. All of the documented Chistochina moose harvests in Unit 12 from 1991 – 2002 occurred within the area covered by Chistochina's prior customary and traditional use determination despite the fact that Chistochina residents were eligible to hunt in most other areas of Unit 12 under State regulations.

39. All areas with documented use by residents of Chistochina for moose hunting, in addition to Ahtna historical and cultural sites not associated with current harvest patterns, could have been easily encompassed in an area of less than 2,500 square miles with logical geographical boundaries.

40. Although the Eastern and Southcentral Alaska Regional Advisory Councils recommended adoption of the proposal to provide a customary and traditional use determination for moose for Chistochina residents, these recommendations were not supported by substantial evidence.

41. In its deliberations on proposal WP05-21, the Eastern Interior Regional Advisory Council found that customary and traditional use had occurred in each of the preexisting areas in Unit 12 covered by previous customary and traditional used determinations.  ADF&G pointed out that evidence of a "pattern of use" throughout the unit was not presented, but the Eastern Interior Regional Advisory Council did not discuss this issue.  The only support for finding customary and traditional use throughout the unit was an unsubstantiated statement from the Ahtna Subsistence Committee stating that Unit 12 was their traditional hunting area, used for

thousands of years.  Members of the Eastern Interior Regional Advisory Council made brief and unsupported comments regarding the customary and traditional use factors but made no effort to show how these factors would be met in areas of the unit that lacked documented use for moose hunting.

42.     In its deliberations on proposal WP05-21, the Southcentral Regional Advisory Council supported the finding that customary and traditional use had occurred in each of the areas in Unit 12 covered by previous customary and traditional use determinations.  ADF&G pointed out that evidence of a pattern of use throughout the other portions of the unit was not presented, but the Southcentral Advisory Council did not address this issue.  The only support for finding customary and traditional use throughout the unit was a statement from the Ahtna Subsistence Committee that Unit 12 was their traditional hunting area, used for thousands of years; there was no substantial evidence to support this statement outside of a small portion of Unit 12 and no additional information was requested by the Council.  The Southcentral Advisory Council did not discuss the eight customary and traditional use factors and made no effort to show how these factors would be met in areas of the unit that lacked documented use for moose hunting.

43.     During the Board's consideration of WPO5-21, the Chair of the Southcentral Regional Advisory Council demonstrated a fundamental misunderstanding of the requirements for making a customary and traditional use determination, implying that a rigorous analysis was not necessary for the Tok, Tanacross, and Tetlin area because of his belief that "there's no federal land there," and also implying that customary and traditional use could be established based on the fact that residents of Chistochina might have gone to Northway "to visit somebody." Transcript at 139-40.  The Federal Government asserts that Native allotments,

including numerous allotments in the vicinity of Tok, Tanacross, and Tetlin, are federal public lands. Nothing in ANILCA allows a customary and traditional use determination to be made based on visitation.

44. The Regional Advisory Councils were presented with information indicating that the federal public lands in Unit 12 were comprised of the Wrangell-Saint Elias National Park and Preserve and the Tetlin National Wildlife Refuge. The Regional Advisory Councils were not presented with information regarding the presence of other federal lands, including isolated parcels in the Northwest and Northeastern portions of Unit 12

45. The Board's Interagency Staff Committee, both in its written report and in comments during the Board's deliberations, recognized that documented uses of moose by Chistochina residents were concentrated in only a portion of Unit 12. Staff Report at 185; Transcript at 134. The Staff Committee recognized that the Board sometimes makes customary and traditional use determinations for whole units and sometimes for subunits or portions of units. The Staff Committee noted that Board decisions regarding whether to apply a determination to a whole unit or a portion of a unit generally "reflect differences in the intensity of management required for biological, conservation, or allocation purposes." Despite the lack of evidence of use of the majority of the Unit, the Staff Committee concurred with the two Regional Advisory Council recommendations, concluding that "no additional benefit occurs from creating new portions of the unit for customary and traditional findings in Unit 12."

46. The only areas in Unit 12 in which moose harvest by residents of Chistochina was documented outside of the prior customary and traditional use determination consisted of less than 200 square miles in the southwestern and central part of the unit including uses in the Nabesna River drainage, north to Pickerel Lake and east of the Nabesna River along Stone

Creek, Cooper Creek, and Camp Creek.  *Compare* Staff Report at 188 and Exhibit A at 18 (Attachment 3).  Use in these areas was documented by household surveys of areas used from 1964 to 1984.

47.     The only documented historical subsistence use of sites in Unit 12 by the Ahtna in the Board's record were in the southwest and central portions of the unit at the confluence of Cooper Creek with the Nabesna River, at the confluence of Jack Creek with the Nabesna River, near the confluence of the Cross and Notch Creeks northwest of Chisana, and near Pickerel Lake.  Staff Report at 189.

48.     There was no documented direct use of moose by residents of Chistochina in the portion of Unit 12 north of the northern border of Jatahmund Lake on the record before the Board at its May 2005 wildlife meeting.

49.     During the Board's consideration of WP05-21, Chairman Demientieff demonstrated a fundamental misunderstanding of the requirements for making a customary and traditional use determination, implying that customary and traditional use could be established based merely on visiting residents of another area for potlatches and "eating each other's foods on those occasions." Transcript at 140.  Nothing in ANILCA allows a customary and traditional use determination to be made based on visitation or eating of food harvested by residents of other communities or areas.

50.     At the Board Meeting on May 3, 2005, the State requested that the Board limit its Chistochina moose customary and traditional use determination to those areas of Unit 12 "where the community has established a customary and traditional pattern of use."

51.     The Chistochina moose customary and traditional use determination, published on June 22, 2005, is inconsistent with the Board's prior customary and traditional use

determinations for moose in Units 11 and 12. In those prior determinations, the Board made positive determinations for only those portions of units where a customary and traditional pattern of use was shown, not for the entire unit.

52. In its August 18, 2005, request for reconsideration of proposal WP05-21, the State proposed that the Board modify its customary and traditional use determination to include an area encompassing 25 percent or less of Unit 12. This area corresponded with both direct and historical use of moose by residents of Chistochina and was consistent with patterns of use. There was no documentation on the record before the Board at its May 2005 wildlife meeting of direct or historical use of moose by residents of Chistochina outside this area.

53. The federal subsistence hunting regulations in Unit 12 do not correspond fully with State hunting regulations in Unit 12, which apply on all lands including federal public lands, to the extent not preempted by federal regulation.

54. Following the June 22, 2005, customary and traditional use rule change, residents of Chistochina may participate in all moose hunts in Unit 12, including antlered-bull federal hunts in the Tetlin National Wildlife Refuge and portions of the Wrangell – St. Elias National Preserve; in much of this area, they would be limited by spike fork, 50-inch or 4 brow tine limitation under state law. They may also participate in a federal registration hunt in these areas from November 20 to November 30 while the state season is closed.

55. The significantly expanded hunt area for Chistochina under the June 22, 2005, rules includes the portion of Unit 12 east of the Nabesna River and south of the winter trail, running southeast from Pickerel Lake to the Canadian Border, where Chistochina residents may now participate in antlered-bull federal hunts where they would be limited by a 50-inch or 4 brow tine limitation under state law. Under the 2005 rule, Chistochina residents are now also

allowed additional hunting time in this area from August 24 through August 31, before the opening of the state season on September 1.

56.     In the northern half of the Unit 12 on federal lands under the 2005 rule, residents of Chistochina now have expanded federal seasons during which hunting is closed under state regulation.  Periods during which hunting is allowed in this area under federal regulation, while prohibited under state regulation, include: August 15 through August 23, and September 1 through September 7.

57.     The June 22, 2005, Chistochina moose customary and traditional use rule change, and resulting changes to hunting rules, can be expected to increase participation, harvest, and competition within the federal subsistence hunts.

58.     If the Board acts in a manner consistent with its action on the Chistochina customary and traditional use determination, Mentasta Lake will also qualify for a customary and traditional use determination for moose in all of Unit 12.  Documented uses of moose in Unit 12 would offer no less evidence for a customary and traditional use determination for moose for Mentasta Lake in Unit 12 than the documentation did for Chistochina.  As additional users qualify for participation, additional restrictions on state subsistence and nonsubsistence users are more likely.  As additional users participate in the federal hunts, the State must monitor moose populations more closely throughout all of Unit 12.

59.     Moose populations in portions of Unit 12 were already under stress prior to the Board's May 2005 customary and traditional use determination and the rules published on June 22, 2005.  The State provided oral testimony to the Board indicating that the moose population on the Tetlin National Wildlife Refuge in Unit 12 is "shaky, at best."

60.   Increased harvest of animals not eligible for harvest under state regulations resulting from the Board's customary and traditional use determination and the rules published on June 22, 2005, will require increased monitoring of harvests in Unit 12 by the State and may require additional season limitations and harvest restrictions under state law in order to assure compliance with the sustained yield mandate of the Alaska Constitution.

### COUNT I - VIOLATION OF ANILCA

61.   The allegations of Paragraphs 1 - 60 of this Complaint are incorporated herein by reference.

62.   The Board's expansion of the customary and traditional determination for moose for Chistochina and accompanying hunting rules in the June 22, 2005, rules violated ANILCA as follows:

(a) the rules provide a subsistence preference for uses that are not "subsistence uses" as defined in section 803 of ANILCA (16 U.S.C. § 3113) because the uses from at least 75 percent of the area covered by the rules are not "customary and traditional";

(b) the rules were adopted in violation of the requirement of section 802 of ANILCA (16 U.S.C. § 3112) for federal agencies to cooperate with adjacent landowners and land managers;

(c) the rules were adopted in violation of the mandate of section 815 of ANILCA (16 U.S.C. § 3125) to limit restrictions on nonsubsistence uses to those restrictions that are necessary.

### COUNT II VIOLATION OF THE APA

63.   The allegations of Paragraphs 1-62 of this Complaint are incorporated herein by reference.

64. The Board's expansion of the customary and traditional determination for moose for Chistochina and accompanying hunting rules in the June 22, 2005, rules are arbitrary and capricious, an abuse of discretion, and not in accordance with the law, in excess of statutory jurisdiction, authority, or limitation, and without procedure required by law in violation of 5 U.S.C. § 706(a)(2) as follows:

(a) the rules are arbitrary and capricious because they provide a subsistence preference for uses that are not "subsistence uses" under ANILCA because the uses from those areas are not "customary and traditional"

(b) the rules include a determination that use of all of Unit 12 for moose hunting by resident of Chistochina is "customary and traditional" without any rational basis for such a determination for seventy-five percent of the area;

(c) the rules are arbitrary and capricious because the Board deferred to recommendations of Regional Advisory councils without considering whether there was substantial evidence to support the recommendations;

(d) the rules are in excess of statutory authority because they provide a subsistence preference for uses that are not "subsistence uses" under ANILCA because the uses from those areas are not "customary and traditional;"

(e) the rules are in excess of statutory authority because the Board has no statutory or regulatory authority to expand its jurisdiction, undermining the jurisdiction and management responsibility of the State, by finding, contrary to the request of the State, that "no additional benefit to management occurs from creating new portions of the unit for customary and traditional findings in Unit 12;"

(f)     the rules are in excess of statutory authority because the rules were adopted in violation of directions in section 802 of ANILCA (16 U.S.C. § 3112) requiring federal agencies to cooperate with adjacent landowners and land managers in managing subsistence activities on the public lands;

(g)     the rules were adopted without observance of procedure required by law because the Board failed to apply the analysis required under 50 C.F.R. § 100.16 and 36 C.F.R. § 242.16 for seventy-five percent of the area covered by the customary and traditional use determination;

(h)     the rules were adopted in excess of statutory authority because the Board's actions will result in unnecessary restrictions on nonsubsistence uses in violation of Section 815 of ANILCA (16 U.S.C. § 3125) and do not balance the competing purposes of ANILCA;

(i)     the Board's determination that that customary and traditional moose hunting in a part of Unit 12 is sufficient to support a customary and traditional use determination for the entire Unit is an abuse of discretion.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff State of Alaska respectfully requests that this Court:

(1)     Hold unlawful and set aside, pursuant to 5 U.S.C. § 706(2), that portion of the defendants' June 22, 2005, rulemaking expanding the customary and traditional use determination for moose for Chistochina residents in Unit 12;

(2)     Enter a declaratory judgment invalidating the portions of the regulations found at 36 C.F.R. Part 242 and 50 C.F.R. Part 100 that are based on the June 22, 2005, rule expanding the customary and traditional use determination for moose for Chistochina residents in Unit 12;

(3) Enjoin the defendants from applying or otherwise relying upon that portion of the defendants' June 22, 2005, rulemaking expanding the customary and traditional use determination for moose for Chistochina residents in Unit 12;

(4) Enjoin the defendants from making further customary and traditional use determinations for geographic areas outside the geographic boundaries of areas where the board has established a rational basis for a customary and traditional use determination under 50 C.F.R. § 100.16 and 36 C.F.R. § 242.16 where the State does not concur with such expansion;

(5) Award plaintiff its reasonable fees, costs, and expenses, including attorney's fees associated with this litigation; and

(6) Grant plaintiff such further and additional relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 8th day of May, 2006

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By: s/_____
Steven A. Daugherty
Assistant Attorney General
Alaska Bar No. 9406032
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501
Ph: (907) 269-5232
Fax: (907) 279-2834
Email: steven_daugherty@law.state.ak.us

Counsel for Plaintiff State of Alaska Alaska