state sovereignty, a state's authority over management of fish and game within its borders.[5]

Federal courts have already acknowledged that ANILCA only authorizes "customary and traditional" subsistence uses on federal public lands in Alaska. *United States v. Alexander*, 938 F.2d 942, 948 (9th Cir. 1991). Under ANILCA and this judicial interpretation, only uses that are customary and traditional, are authorized by ANILCA.

There is nothing in the record of the Board to show that moose hunting by residents of Chistochina within all of Unit 12 is consistent with customary practice because clear evidence presented showed use of only a small portion of Unit 12, and all areas with any documentation of use, including Ahtna historical and cultural sites, could have been encompassed in an area with logical geographic boundaries and still constitute only 25 percent of Unit 12.[6] By making an unsupported customary and traditional determination for all of Unit 12, the Board provides a subsistence priority for hunting that does not fall within the ANILCA's definition of "subsistence uses."

C.  **The regulations are inconsistent with ANILCA because they are likely to cause unnecessary restrictions of nonsubsistence use.**

Reconsideration is required because, in adopting the customary and traditional use determination the Board failed to recognize its duty to prevent unnecessary restrictions on nonsubsistence uses. Section 815 of ANILCA provides:

> Nothing in this subchapter shall be construed as:
> . . .
> (3) authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands (other than national parks and park monuments) unless necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in section 3126 of this title, to

---

[5] "[I]f Congress intends to alter the usual constitutional balance between the states and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Accordingly, courts will not construe a statute to alter the federal balance unless that result is unmistakably clear in the language of the statute. *Vermont Agency of Natural Resources v. United States*, 529 U.S. 765, 768, 120 S.Ct. 1858, 1870 (2000). ANILCA's subsistence provisions involve the balance of federal power because management of fish and wildlife within its borders is "peculiarly within [a state's] police powers." *Baldwin v. Fish and Game Comm'n of Montana*, 436 U.S. 371, 391 (1978).

[6] See Attachments 1-3.

Exhibit A
Page 13 of 18

>continue subsistence uses of such populations, or pursuant to other
>applicable law; . . .

16 U.S.C.A. § 3125(3) (2000).

Although the unsupported customary and traditional use determination in this case does not impose additional direct immediate restrictions on taking of fish and wildlife for nonsubsistence use, it can be expected to cause unnecessary restrictions. Further, such actions have cumulative effects which could result in unnecessary complete closures of federal lands to non-federally qualified subsistence users.

The state noted that at least one of the moose populations affected by this proposal, the population on the Tetlin Refuge in Unit 12, "is shaky, at best." Transcript at 136. The state also noted that an increase in the number of federally qualified users would result in increasing pressure to close the lands to non-federally qualified users because the potential for demand to outweigh supply would increase. *Id.* The state also indicated that increased eligibility had the potential to increase the take of moose in Unit 12, and that a similar request could be expected from Mentasta Lake, further increasing the pool of eligible users. *Id.* at 137.

As indicated above, the Board's regulatory action providing a customary and traditional use determination for Chistochina residents in all of Unit 12 allows Chistochina residents to participate in federal subsistence hunts with expanded seasons and reduced harvest restrictions within areas totaling over 7,500 square miles in which they have no demonstrated pattern of use. These changes can be expected to increase participation, harvest, and competition within the federal subsistence hunts. Restrictive state management actions in the form of short seasons and limits on the bulls that can be harvested have already been required in much of Unit 12. *See* 5 AAC 85.045(10). Longer federal hunting seasons and increased harvest of animals not eligible for harvest under state law are likely to require adjustment of seasons and harvest restrictions under state law, and are likely to lead to further restrictions on federal lands as well. The state raised concerns about the increasing competition and likelihood of future restrictions before the Board, Transcript at 135-137, but the Board still failed to limit its customary and traditional use determination to areas with a demonstrated pattern of use, instead following advisory council recommendations that were not supported by substantial evidence and an unsupported statement from federal staff that "no additional benefit to management occurs from creating new portions of a unit for customary and traditional findings in Unit 12." Transcript at 134. As a result, the Board's regulatory action, if not corrected, will lead to unnecessary restrictions on nonsubsistence uses in violation of section 815 of ANILCA.

### D. The regulations are arbitrary and capricious.

In order to be valid, regulations must be reasonable, and not arbitrary or capricious. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 822 (U.S. 1971). The object of the final rules is purportedly to provide for customary and traditional subsistence uses, but the record does not demonstrate that the hunting allowed is customary or traditional. This logical defect renders the final rules arbitrary and capricious. Accordingly, the Board should reconsider its decision to implement these invalid regulations.

## IV. Conclusion.

The regulations finding customary and traditional use of moose in all of Unit 12 for Chistochina are inconsistent with ANILCA and with Federal Subsistence Management Regulations. They ignore regulatory and statutory definitions and criteria. They authorize hunting that is not customary and traditional, and that will lead to unnecessary restrictions on other users. They ignore clear evidence presented to the Board and requests from the State of Alaska for use of that evidence. They provide a subsistence preference for Chistochina in all of a 10,000 square mile unit when extensive data showed usage from 1964-1984 in only 206 square miles of the unit, and historical and cultural data provided support for expansion to at most 2,500 square miles. *Compare* Materials at 188-89, 192-93 *and* Attachments 1-3. The regulations are arbitrary and capricious. For these reasons, the State of Alaska respectfully requests that the Federal Subsistence Board reconsider its final rules finding customary and traditional use of moose in all of Unit 12 for residents of Chistochina, and instead adopt regulations finding customary and traditional use only in those portions of Unit 12 where a history of use by residents of Chistochina has been shown.

DATED: 8/18/05

STATE OF ALASKA
DEPARTMENT OF FISH AND GAME

MCKIE CAMPBELL, COMMISSIONER

Exhibit A
Page 15 of 18

Chistochina: Federal Customary and Traditional Use Findings for Moose
Prepared by Brian Davis and James Fall, ADF&G Divison of Subsistence, 8/9/05

Pre-May 2005 Finding

| | |
|---|---|
| GMU 13 | 23,368 square miles |
| GMU 11 | 12,785 square miles |
| GMU 12 (portion) | 1,133 square miles |
| Total | 37,286 square miles |

Portion of GMU 12 = that portion south of a line from Noyes Mountain, southeast of the confluence Totschunda Creek to Nabesna River.

FSB May 2005 Finding

| | |
|---|---|
| GMU 13 | 23,368 square miles |
| GMU 11 | 12,785 square miles |
| GMU 12 (all) | 10,000 square miles |
| Total | 46,153 square miles |

ADF&G Proposed Finding

| | |
|---|---|
| GMU 13 | 23,368 square miles |
| GMU 11 | 12,785 square miles |
| GMU 12 (portion) | 2,500 square miles |
| Total | 38,653 square miles |

Portion of GMU 12 = that portion that includes the drainage of the Nabesna River upstream from the mouth of Lick Creek, and the area south of and inlcuding the Pickeral Lake Winter Trail from Lick Creek to the Chisana River.

Mapped Chistochina Use (Moose and Caribou) Area within GMU 12 =

206 square miles

Percentage of Mapped Subsistence Use Area of:
| | |
|---|---|
| All of GMU 12 | 2.06% |
| Previous C&T Area | 18.18% |
| ADF&G proposed area | 8.24% |

Increase in C&T Area Compared to Pre-May 2005 Finding

| | sq. miles | % increase (all) | % increase in GMU 12 |
|---|---|---|---|
| FSB May 2005 finding | 8,867 | 23.78% | 782.6% |
| ADF&G proposed area | 1,367 | 3.67% | 120.7% |

Exhibit A
Page 16 of 18

Attachment 1
Page 1 of 1



Hunting Areas Used by Chistochina Residents, 1964-1984 And Proposed C&T Area

Ref: ADF&G, 1985

- ⬚ GMU Boundary
- Proposed C&T Boundary
- ▨ Moose and Caribou Hunting Areas, 1964-1984

0 5 10 20 30 Miles

Exhibit A
Page 17 of 18

Attachment 2
Page 1 of 1



Hunting Areas Used by Chistochina Residents, 1964-1984 And Proposed C&T Area

Exhibit A
Page 18 of 18

Attachment 3
Page 1 of 1