

# Federal Subsistence Board

3601 C Street, Suite 1030
Anchorage, Alaska 99503

JAN 17 2006



FISH and WILDLIFE SERVICE
BUREAU of LAND MANAGEMENT
NATIONAL PARK SERVICE
BUREAU of INDIAN AFFAIRS

FOREST SERVICE

FWS/FSB/OSM/WRFR05-02

Mr. McKie Campbell, Commissioner
Alaska Department of Fish and Game
P.O. Box 25526
Juneau, Alaska 99802

Dear Commissioner Campbell:

This is to inform you of the action taken by the Federal Subsistence Board on the Alaska Department of Fish and Game's request (WRFR05-02), received on August 18, 2005, to reconsider the Board's May 3, 2005, decision to expand the Unit 12 Chistochina customary and traditional use determination for moose to include all of Unit 12.

Under Federal regulation 50 CFR Part 100.20, the Board will accept a request for reconsideration if it is received timely, and is based upon information not previously considered by the Board, demonstrates that the existing information is incorrect, or demonstrates that the Board's interpretation of information, applicable law, or regulation is in error or contrary to existing law.

The Board met on January 9, 2006, to determine whether or not your request meets any of the above criteria. The request was received timely. However, based upon a review of the claims made in your letter, the Board concluded that the arguments presented in your request do not meet the criteria to warrant further reconsideration. Specifically, your request did not provide the Board with relevant information not previously considered, did not demonstrate that the existing information used by the Board was incorrect, nor did it demonstrate that the Board's interpretation of information, applicable law, or regulation were in error or contrary to existing law.

During its May 3-4, 2005 meeting, the Board considered proposal WP05-21, which requested that the Board revise the customary and traditional use determination for moose in portions of Unit 12. The proponent of WP05-21, which was submitted in fall 2004, requested an expansion of the customary and traditional use determination for moose in two portions of Unit 12 to include the residents of Chistochina. Chistochina is located in Unit 13C, which is adjacent to Unit 12.

The Board received recommendations from Federal Subsistence Regional Advisory Councils and the Federal Interagency Staff Committee, and heard comments from the

Exhibit B
Page 1 of 26

Mr. McKie Campbell, Commissioner                                                                 2

State of Alaska and from the public. The Board deliberated and adopted the final rule only after careful consideration of all input received. To implement the Board's decision, appropriate regulations were published in the Federal Register on June 22, 2005, (70 CFR 36268).

Your request for reconsideration includes five claims. The first claim is that new information demonstrates that the Board's interpretation of existing data was in error. The use of the acreage figures provided in your request is not new information, but rather a repackaging of information that the Board had before it, either in the proposal analysis or the testimony from ADF&G that the documented use might not cover the entire Unit evenly. The requestor did not provide any new information that obligates the Board to reconsider its decision or any evidence that the information considered by the Board was incorrect or incorrectly interpreted.

The second claim is that the regulation is inconsistent with the regulatory definition of customary and traditional use and with the application of the regulatory criteria for finding customary and traditional use. The Board acted well within its discretion when it chose to apply its finding of a pattern of use to the entire Unit, rather than creating a patchwork of findings. A review of the staff analysis reveals that each of the eight factors appears to have been thoroughly addressed and included in the record before the Board at its May 2005 meeting. A Federal customary and traditional use determination is typically based on an integrated discussion of the factors and the totality of the circumstances. The requestor did not provide any new relevant information or evidence that the information considered by the Board was incorrect or incorrectly interpreted.

The third claim is that the regulation is inconsistent with ANILCA because it authorizes a subsistence priority for hunting that is not customary or traditional. Both the State and the Board acknowledge that moose hunting is a customary and traditional use as defined by Section 803 of ANILCA and that the residents of Chistochina have hunted in certain parts of Unit 12. This is sufficient to support the Board's decision. Consequently, the requestor's argument provides no new relevant information or evidence that the information considered by the Board was incorrect or incorrectly interpreted.

The fourth claim is that the regulations are inconsistent with ANILCA because they are likely to cause unnecessary restrictions of nonsubsistence use. Because the requestor's argument is founded on a misperception of the purpose for and rationale behind a C&T use determination and an unfounded assumption that the Board's action will result in increased take, there is no merit to this claim.

The fifth claim is that the regulation is arbitrary and capricious. The Board heard testimony in a public forum regarding the issue from Regional Council Chairs, members of the public, and agency staff. The decisions made by the Board were based on the best evidence available.

I am enclosing a copy of the threshold analysis, which provides a more complete evaluation of the request for reconsideration.

Mr. McKie Campbell, Commissioner 3

In summary, the Board found that in none of your claims did you present new information, demonstrate that the information the Board used was incorrect, or demonstrate that our interpretation of information, applicable law, or regulation was in error or contrary to existing law. For these reasons, the Board's conclusion is that your request does not meet the threshold for Federal Subsistence Board consideration as set forth in 50 CFR Part 100.20 (d), and is therefore rejected.

If you have any questions, you may contact Thomas H. Boyd, Assistant Regional Director for Subsistence Management, at (907) 786-3864.

Sincerely,

Mitch Demientieff, Chair
Federal Subsistence Board

Enclosure

cc: Federal Subsistence Board
    Chairs, Federal Subsistence Regional Advisory Councils
    Interagency Staff Committee
    Thomas H. Boyd, OSM
    Marianne See, ADF&G

*Bill Knauer, 786-3873*                                                                 *December 16, 2005*

## THRESHOLD ANALYSIS
## REQUEST FOR RECONSIDERATION WRFR05-02

**Issue**

The State of Alaska requests that the Federal Subsistence Board (Board) reconsider its decision of May 3, 2005 on Proposal WP05-21. The effect of the decision was to expand the customary and traditional use determination for moose in Unit 12 to include Chistochina. The State believes reconsideration is required because "new information, not previously considered by the Board demonstrates that the Board's interpretation of existing information was in error...." The State further believes that the Board's adoption of the expanded customary and traditional use determination was inconsistent with existing regulatory criteria for making customary and traditional use determinations, contrary to the Alaska National Interest Lands Conservation Act (ANILCA), and arbitrary and capricious.

**Background**

In May 2005 the Board considered a proposal, WP05-21, to revise the customary and traditional use determination for moose in portions of Unit 12. The proponent of WP05-21, which was submitted in fall 2004, requested an expansion of the customary and traditional use determination for moose in two portions of Unit 12 to include the residents of Chistochina. Chistochina is located in Unit 13C, which is adjacent to Unit 12.

Prior to the Board's determination, the staff analysis had been presented to the Eastern Interior and Southcentral Regional Advisory Councils. The analysts reviewed each of the eight regulatory factors for determining customary and traditional uses, noting that Chistochina has close kinship ties with various communities already included in the customary and traditional use determination for moose in the questioned areas. Significantly, the analysts also found that residents of Chistochina have harvested moose in these same areas since the late 19th century.

Representatives of the Alaska Department of Fish and Game were given opportunities to comment on the proposal at each Regional Advisory Council meeting and again at the Board meeting. At the Eastern Interior Alaska Regional Advisory Council meeting, State representatives stated that although they did have some concerns, they were "neutral on this proposal at this time." They also acknowledged that the residents of Chistochina have hunted moose in areas of Unit 12 for which they did not have a positive C & T finding. Finally, they stated that although it was unclear whether a finding throughout Unit 12 would have any significant negative effects, they did not believe that it would. (Eastern Interior Alaska Regional Advisory Council 2005, p. 66.) At this same meeting, a representative of the Wrangell-St. Elias Subsistence Resource Commission voiced support for the proposal. Similarly, a representative of the Ahtna Subsistence Committee also testified in support of the proposal, indicating that the Chistochina residents have customarily hunted in Unit 12 for caribou, moose, sheep, and other wildlife. Following some questions and clarifications, the Eastern Interior Regional Council recommended unanimously for the Board to adopt the proposal.

At the Southcentral Alaska Regional Advisory Council meeting, a representative of the Alaska Department of Fish and Game reiterated the same information and position presented to the Eastern Interior Alaska Regional Council. (Southcentral Alaska Advisory Council 2005, p. 128.) Chairman Ralph Lohse made the statement that "If the [Interior Regional Council] had concerns, I would expect them to

1

**Exhibit B**
**Page 4 of 26**

Bill Knauer, 786-3873											December 16, 2005

come up with drawing the lines on the map..." The positions of the Wrangell-St. Elias Subsistence Resource Commission and the Ahtna Subsistence Committee were also presented to the Regional Council. Like the Eastern Interior Alaska Council, the Southcentral Alaska Regional Council recommended unanimously for the Board to adopt the proposal.

During the May 2005 Federal Subsistence Board meeting, the Alaska Department of Fish and Game representatives changed their position slightly. They indicated that there is no documentation of Chistochina's use of the northwestern portion of Unit 12 and urged the Board to extend the customary and traditional use determination only to those parts of the Unit where there is a documented use. As support for their argument to subdivide Unit 12 in this manner, they pointed to a previous action in which the Board, pursuant to the recommendation of the affected Regional Advisory Council, voted to limit the customary and traditional use of moose in Unit 11 by communities in Unit 12 to only a portion of Unit 11.

In contrast to the State's position, the subsistence advocate for the Cheesh-na Tribal Council (Chistochina) and Mentasta, Wilson Justin, testified that it is his belief that Chistochina residents have established a pattern of "clear and relatively consistent use" of subsistence resources throughout Units 11, 12, and most of 13. Ralph Lohse, as Chair of the Southcentral Alaska Regional Council, also spoke in support of the proposal, pointing out that Chistochina residents, as they travel to Tok, Tetlin, and Northway, would be likely to hunt in Unit 12 along the way.

Following Board discussion on this conflicting testimony, the Board deferred to the recommendations of the affected Regional Advisory Councils and unanimously adopted the proposal. To implement the Board's decision, appropriate regulations were published in the Federal Register on June 22, 2005 (70 FR 36268). (Appendix B)

**Regulatory Language Regarding Requests for Reconsideration**

The applicable regulatory language associated with requests for reconsideration can be found in Appendix A.

**Preliminary Assessment of Requestor's Claims**

The State of Alaska's Request for Reconsideration is based on its claims that: (1) new information demonstrates that the Board's interpretation existing data was in error; (2) the new regulation is inconsistent with the regulatory definition of "customary and traditional use" and contrary to the regulatory criteria for finding customary and traditional use; (3) the regulation is inconsistent with ANILCA because it authorizes a subsistence priority for hunting that is not customary or traditional; (4) the regulation is inconsistent with ANILCA because it is likely to cause unnecessary restrictions of nonsubsistence uses; and, (5) the regulation is arbitrary and capricious. These arguments are summarized below, followed by a preliminary assessment of each claim. The five specific claims are assessed as they apply to the Board's decision to revise the customary and traditional use determination for moose in Unit 12 to include residents of Chistochina.

**Claim 1. New information demonstrates that the Board's interpretation of existing data was in error.**

*Bill Knauer, 786-3873* *December 16, 2005*

The State contends that new information shows that only a portion of Unit 12 was used by the residents of Chistochina, rather than the entire Unit. This new information was recently compiled by the State from community resource harvest area data. It suggests that Chistochina residents used only 206 square miles of the 10,000 square miles in Unit 12 during the period 1964-1984. This compilation was not available to the Board when it made its decision. Rather, the information before the Board was limited to general geographic descriptions and map points in Unit 12.

Preliminary assessment of claim 1:

When addressing the State's argument, the threshold issues that must be considered are: (1) whether or not the Board is legally obligated to subdivide a Unit for the purposes of making a C&T determination when the evidence demonstrates customary and traditional use of only a portion of that Unit; and (2) if the Board is legally obligated to do so, whether or not the evidence supports subdividing Unit 12 in this instance.

With regard to the first threshold issue, there is nothing in either ANILCA or the subsistence regulations that expressly requires the Board to subdivide units for the purposes of making a customary and traditional use determination. To the contrary, §_.16 of the applicable regulations merely require the Board to identify a community's or area's use of "specific fish stocks and wildlife populations." 50 C.F.R. 100.16. In the absence of an express requirement, it appears to be within the Board's discretion to determine how to best delineate geographic boundaries when making a C&T use determinations.

Indeed, in the past, the State has discouraged the Board from subdividing units so as to avoid creating a patchwork of customary and traditional use determinations. For instance, in a letter dated June 2, 1994, State representatives opined that "[a] regional approach [to C&T use determinations] (e.g. GMU or drainage basin) is preferable to weighing the evidence for each small place within a region and splitting up the region's population into two groups: those who qualify to subsistence hunt and fish and those who do not." (Appendix E, at page 4). Although the Board may use its discretion to further subdivide units when appropriate, they are not bound to do so. Moreover, it is often clearer to the public to use the geographic units already created by the State rather than further complicate the effects of dual management by the creation of separate Federal subunits.

For these reasons, the Board acted well within its discretion when it declined to further subdivide Unit 12 for the purposes of this proposal. The record shows that the State raised the issue of use in a smaller area of Unit 12 to Board during its meeting. This demonstrates that the Board did consider the possibility of dividing the Unit, but chose not to do so, nor did the Regional Councils recommend that the Board do so.

In light of the conclusion that the Board acted within the bounds of its discretion, it is not necessary to address the question of whether or not the new information provided by the State supports subdivision of the Unit. Nevertheless, it is worth noting that even though the specific acreage figures were not available at the time of the Board's decision, they are not relevant because the Board is not legally obligated to use acreage figures to determine an area of customary and traditional use. Indeed, the Board has never used acreage figures in making a C&T use determination. Rather, it was simply following its existing practices in this instance. Additionally, the use of the acreage figures is not new information, but rather a repackaging of information that the Board had before it, either in the proposal analysis or the testimony from ADF&G that the documented use might not cover the entire unit evenly. Moreover, there are good reasons, as the State has pointed out in the past, to avoid creating a more complex regulatory "patchwork" of C&T use determinations and separate Federal subunits. For these reasons, it appears that the State has

3

**Exhibit B**
**Page 6 of 26**

Bill Knauer, 786-3873                                                                                          December 16, 2005

not provided any new information that obligates the Board to reconsider its decision or any evidence that the information considered by the Board was incorrect or incorrectly interpreted.

**Claim 2. The regulation is inconsistent with the regulatory definition of customary and traditional use and with the application of the regulatory criteria for finding customary and traditional use.**

According to the State's Request for Reconsideration, the Board failed to discuss all of the eight factors set forth in regulation for determining whether or not to grant a positive C&T use determination. The State also contends that the written staff analysis, even though it purported to apply the eight factors, was fundamentally flawed because the analysis was not tied to the same populations of moose and the same areas in which a historical pattern of use was demonstrated. For these reasons, the State believes that the Board's decision fails to comport with the regulatory definition of "customary and traditional use" because the definition requires a "long-established, consistent pattern of use" in the area under consideration.

Preliminary assessment of claim 2:

This claim again raises the issue of whether or not the Board was obligated to create a new geographical boundary within Unit 12 in order to further distinguish between areas with a pattern of use and areas with little or no pattern of use. In its discussion on this claim, the State concedes that the available data "might" support finding a "pattern of use" – a phrase used in six of the eight factors -- in a limited part of the B or C portions of the Unit (See Appendix C, Map 1). As previously discussed, it appears that the Board acted well within its discretion when it chose to apply its finding of a pattern of use to the entire Unit, rather than creating a patchwork of findings.

Another consideration bearing on the State's contention is that a review of the staff analysis reveals that each of the eight factors appears to have been thoroughly addressed and included in the record before the Board at its May 2005 meeting. In any event, the Board is not obligated by either statute or regulation to engage in an oral factor-by-factor discussion. Rather, a Federal customary and traditional use determination is typically based on an integrated discussion of the factors and the totality of the circumstances. The eight factors simply provide a general framework for examining the pattern of use of the resource. They are not a checklist per se.

In light of these considerations, it appears that the State's argument provides no new relevant information or evidence that the information considered by the Board was incorrect or incorrectly interpreted.

**Claim 3. The regulation is inconsistent with ANILCA because it authorizes a subsistence priority for hunting that is not customary or traditional.**

According to State interpretation, the Board's decision is contrary to Section 803, because there was no evidence of customary and traditional moose hunting in all of Unit 12 by the residents of Chistochina. As support for its position, the State contends that Section 803 must be narrowly construed because the Board is encroaching on a basic aspect of State sovereignty -- its authority over management of fish and game within its borders.

Preliminary assessment of claim 3:

*Bill Knauer, 786-3873* *December 16, 2005*

This argument is functionally indistinguishable from claim 2. Both claims are founded in the unsupported precept that the Board is legally obligated to create new geographical boundaries corresponding precisely to demonstrated customary and traditional use patterns, rather than making C&T use determinations on a unit-wide basis.

Both the State and the Board acknowledge that moose hunting is a customary and traditional use as defined by Section 803 of ANILCA and that the residents of Chistochina have hunted in certain parts of Unit 12. As previously discussed, this is sufficient to support the Board's decision. Consequently, the State's argument provides no new relevant information or evidence that the information considered by the Board was incorrect or incorrectly interpreted.

**Claim 4. The regulations are inconsistent with ANILCA because they are likely to cause unnecessary restrictions of nonsubsistence use.**

According to the State, the Board failed to recognize its duty to prevent unnecessary restrictions on nonsubsistence uses as required by Section 815 of ANILCA.

Preliminary assessment of claim 4:

The State's argument is based on the misperception that population numbers and competition for harvestable surpluses are relevant to a customary and traditional use determination. A customary and traditional use determination is nothing more than a recognition of which communities have used a resource and in which area. It does not allocate resources between subsistence users and other users. The conservation of wildlife resources and the allocation of harvest opportunities are provided through the establishment of annual seasons and harvest limits, rather than through the C&T use determination process.

Further, the State's contentions are based in the unfounded assumption that the expanded C&T use determination will lead to the taking of additional moose. The State agrees that residents of Chistochina currently take a certain number of moose from Unit 12. Given the practical nature of subsistence hunting, these residents will likely continue to take only what they need and have already been taking under State regulations. There is unlikely to be any effect or additional competition for the harvestable surplus.

Because the State's argument is founded on a misperception of the purpose for and rationale behind a C&T use determination and an unfounded assumption that the Board's action will result in increased take, there is no merit to this claim.

**Claim 5. The regulation is arbitrary and capricious.**

Regulations, in order to be valid, must be reasonable, and not arbitrary or capricious. The State contends that the object of the final rule is purportedly to provide for customary and traditional subsistence uses, but the record does not demonstrate that the hunting allowed is customary or traditional. They claim that this logical defect renders the final rules arbitrary and capricious and, accordingly, the Board should reconsider its decision to implement these invalid regulations.

*Bill Knauer, 786-3873* *December 16, 2005*

<u>Preliminary assessment of claim 5:</u>

This claim does not state any new facts or present any new arguments, but re-frames the previous arguments under the specter of the Administrative Procedure Act. The fundamental factual basis for this argument is that the record does not demonstrate that the hunting is customary or traditional. Yet, as the State concedes, the record does demonstrate that residents of Chistochina customarily and traditionally hunted in certain sections of Unit 12. For this reason, the Board's decision to defer to the Regional Advisory Councils' recommendations and grant C&T to Chistochina residents for all of Unit 12, rather than starting to create an unmanageable patchwork of C&T findings, is reasonable. There appears to be no merit to the claim that the Board erred in its interpretation of information, applicable law, or regulation or made a decision contrary to existing law.

## SUMMARY

The State of Alaska requests that the Federal Subsistence Board reconsider its decision of May 3, 2005, on Proposal WP05-21, revising the customary and traditional use determination for moose in Unit 12 to include Chistochina. The Request for Reconsideration of the regulation regarding the customary and traditional use determination was received timely.

The State provided no information that demonstrates that existing information used by the Board is incorrect, or that demonstrates that the Board's interpretation of information, applicable law or regulation is in error or contrary to existing law. Thus, there appears to be no merit to the request or a need for further analysis on the claims.

## LITERATURE CITED

ADF&G. 1994. Letter to Assistant Regional Director, Subsistence Management, FWS. June 2, 1994

Eastern Interior Alaska Regional Advisory Council. 2005. Meeting Transcripts, March 2, 2005.

FSB. 2005. Federal Subsistence Board Wildlife Meeting Transcripts, May 3, 2005.

Southcentral Alaska Regional Advisory Council. 2005. Meeting Transcripts, March 16, 2005.

*Bill Knauer, 786-3873* *December 16, 2005*

## APPENDIX A - Regulatory language regarding Requests for Reconsideration

Subsistence Management Regulations at 36 CFR Part 242 and 50 CFR Part 100, dated May 7, 2002, state the following regarding requests for reconsideration.

§ _____.20 *Request for reconsideration.*
  (a) Regulations in subparts C and D of this part published in the Federal Register are subject to requests for reconsideration.
  (b) Any aggrieved person may file a request for reconsideration with the Board.
  (c) To file a request for reconsideration, you must notify the Board in writing within sixty (60) days of the effective date or date of publication of the notice, whichever is earlier, for which reconsideration is requested.
  (d) It is your responsibility to provide the Board with sufficient narrative evidence and argument to show why the action by the Board should be reconsidered. The Board will accept a request for reconsideration only if it is based upon information not previously considered by the Board, demonstrates that the existing information used by the Board is incorrect, or demonstrates that the Board's interpretation of information, applicable law, or regulation is in error or contrary to existing law. You must include the following information in your request for reconsideration:
  (1) Your name, and mailing address;
  (2) The action which you request be reconsidered and the date of Federal Register publication of that action;
  (3) A detailed statement of how you are adversely affected by the action;
  (4) A detailed statement of the facts of the dispute, the issues raised by the request, and specific references to any law, regulation, or policy that you believe to be violated and your reason for such allegation;
  (5) A statement of how you would like the action changed.
  (e) Upon receipt of a request for reconsideration, the Board shall transmit a copy of such request to any appropriate Regional Council and the Alaska Department of Fish and Game (ADFG) for review and recommendation. The Board shall consider any Regional Council and ADFG recommendations in making a final decision.
  (f) If the request is justified, the Board shall implement a final decision on a request for reconsideration after compliance with 5 U.S.C. 551–559 (APA).
  (g) If the request is denied, the decision of the Board represents the final administrative action.

Bill Knauer, 786-3873                                                                December 16, 2005

**APPENDIX B** – Moose customary and traditional use determinations for Unit 12.

| | | |
|---|---|---|
| Unit 12, that portion west of the Nabesna River and Nabesna Glacier, south of a line from Noyes Mountain to the confluence of Tatschunda Creek with the Nabesna River. | Moose | Residents of Unit 11 north of 62nd parallel, Unit 12, 13A - D and the residents of Chickaloon, Dot Lake, and Healy Lake. |
| 12, that portion east of the Nabesna River and Nabesna Glacier, south of the Winter Trail from Pickerel Lake to the Canadian Border. | Moose | Residents of Unit 12, **Chistochina**, and Healy Lake. |
| 12, remainder | Moose | Residents of Unit 12, **Chistochina**, Dot Lake, Healy Lake, and Mentasta Lake. |

[Note: **Bold** text indicates new regulations implementing the Board's May 2005 determination.]

*Bill Knauer, 786-3873* *December 16, 2005*

**APPENDIX C – Proposal WP05-21**

WP05-21

| | WP05-21 Executive Summary | |
|---|---|---|
| **General Description** | Revise C&T use determination to include residents of Chistochina [submitted by: Cheesh-na Tribal Council]. | |
| **Proposed Regulation** | Unit 12 – Moose<br><br>Customary and Traditional Use Determination | |
| | *Unit 12 — south of a line from Noyes Mountain, southeast of the confluence of Tatschunda Creek to Nabesna River.* | *Residents of Unit 11 north of 62nd parallel, Unit 12, 13A - D and the residents of Chickaloon, Dot Lake, and Healy Lake.* |
| | *Unit 12 — east of the Nabesna River and Nabesna Glacier, south of the Winter Trail from Pickerel Lake to the Canadian Border.* | *Residents of Unit 12, **Chistochina**, and Healy Lake.* |
| | *Unit 12 — remainder* | *Residents of Unit 12, **Chistochina**, Dot Lake, Healy Lake, and Mentasta Lake.* |
| **Southcentral Regional Council Recommendation** | Support. | |
| **Eastern Interior Regional Council Recommendation** | Support. | |
| **Interagency Staff Committee Recommendation** | Support. | |
| **ADF&G Comments** | The Federal Subsistence Board meeting book is being published prior to development of final recommendations and comments by the Alaska Department of Fish and Game. This information will be available on the Department's website by April 29, 2004. See the ADF&G homepage, under the headings of "highlights" and "regulations", at http://222.adfg.state.ak.us. For those without computer access, please call 1-907-459-7256 for further information. | |
| **Written Public Comments** | 2 Support. | |