DEAN K. DUNSMORE
U.S. Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone:(907) 271-5452
Facsimile:(907) 271-5827
Email: dean.dunsmore@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

STATE OF ALASKA                    )
                                   ) CASE NO. 3:06-cv-00107-HRH
          Plaintiffs,              )
                                   )
     v.                            )
                                   )
MICHAEL FLEAGLE, Chairman,         )
FEDERAL SUBSISTENCE BOARD,         )
et al.                             )
                                   )
          Defendants.              )
_____)

BRIEF OF THE DEFENDANTS

TABLE OF CONTENTS

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 2

    A. STATUTORY AND REGULATORY BACKGROUND. . . . . . . . . 2

    B. GMU 12 C&T DETERMINATIONS. . . . . . . . . . . . . . 3

    C. THE CHALLENGED ACTION. . . . . . . . . . . . . . . . 6

    D. THE STATE'S POSITION. . . . . . . . . . . . . . . . 7

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 10

I.   THE STATE LACKS STANDING TO CHALLENGE THE BOARD'S CUSTOMARY
     AND TRADITIONAL USE DETERMINATION . . . . . . . . . . 10

    A. The State must show an actual or threatened injury as a
        result of the challenged action . . . . . . . . . 10

    B. The C&T determination establishes no rights that effect
        the State. . . . . . . . . . . . . . . . . . . 14

II.  A DEFERENTIAL STANDARD OF REVIEW IS TO BE APPLIED . . . 16

III. THE C&T DETERMINATION FOR CHISTOCHINA IN GMU 12
     WAS REASONABLE AND CONSISTENT WITH ANILCA . . . . . . . 21

    A. ANILCA does not require the customary and traditional
        taking of moose within GMU 12 . . . . . . . . . . 21

    B. The Chistochina C&T determination is sufficiently
        supported by the record. . . . . . . . . . . . . 24

    C. Regional council recommendations and the Board's
        determination are not required to be supported by
        substantial evidence. . . . . . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 39

Defendants Michael Fleagle, Chairman, Federal Subsistence Board; Dirk Kempthorne, Secretary of the Interior; and Mike Johanns, Secretary of Agriculture, respond herein to the Plaintiff's Motion for Summary Judgment (Docket Entry No. 23) and Memorandum in Support of Plaintiff's Motion for Summary Judgment (Docket Entry No. 24). The latter shall hereinafter be referred to as "Plf's Memo."

The plaintiff, State of Alaska, seeks judicial review in this action of the customary and traditional use determination (hereinafter referred to as "C&T" determination) for residents of Chistochina for moose within State Game Management Unit ("GMU") 12, published at 70 Federal Register 36268, 26274 (June 22, 2005).[1/] Complaint for Declaratory and Injunctive Relief (Docket Entry No. 1) ¶¶ 7-8. The determination at issue was promulgated by the Federal Subsistence Board in implementation of Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3111-3126, and in particular the priority set forth in 16 U.S.C. §§ 3113-3114. As defendants will show herein, the Board's determination must be sustained.

---

[1/]    A copy of this Federal Register notice is found at Volume 4, Tab 39 of the Administrative Record as certified and filed with the Court on September 9, 2006. Defendants' Notice of Filing of Administrative Record (Docket Entry No. 22). Hereinafter, defendants will refer to the administrative record as Admin Record by tab and page number. For example, the C&T determination at issue would be referenced as Admin  Rec. Tab 39 at 2287.

STATEMENT

**A. STATUTORY AND REGULATORY BACKGROUND.** The history and
basic requirements of Title VIII of ANILCA and the impediments to
implementation of that statute by the State of Alaska are
described and discussed in *Native Village of Quinhagak v. United
States*, 307 F.3d 1075, 1076-77 (9th Cir. 2002); *Ninilchik
Traditional Council v. United States*, 227 F.3d 1186, 1189 (9th
Cir. 2000); *State of Alaska v. Babbitt*, 72 F.3d 698, 700-01 (9th
Cir. 1995), *cert denied*, 516 U.S. 906, 516 U.S. 1036 (1996),
*adhered to en banc*, *Katie John v. United States*, 247 F.3d 1032
(9th Cir. 2001), and are familiar to this Court. Therefore, these
will not generally be repeated herein.

In short, the Secretaries of the Interior or Agriculture,
depending on the land unit at issue, are required to administer
the public lands as defined in 16 U.S.C. § 3102(3), so as to
provide rural Alaska residents with a priority for the taking of
fish and wildlife on the public lands for "nonwasteful
subsistence uses." 16 U.S.C. §§ 3102(12), 3113-3114. The
Secretaries are also directed to prescribe "such regulations as
are necessary" to carry out their responsibilities under this
statute. 16 U.S.C. § 3124.

The Secretaries have jointly promulgated regulations to
implement the Title VIII priority and these are identical but
separately codified. The Department of the Interior's regulations

are codified at Title 50 of the Code of Federal Regulations, Part
100; and the Department of Agriculture's are codified at Title 36
of the Code of Federal Regulations, Part 242.[2/] In these
regulations, the Secretaries created the Federal Subsistence
Board ("Board") and assigned to that Board some of the duties
imposed on the Secretaries. 50 C.F.R. § 100.10 (2005).[3/] Among
the duties given to the Board is to "[d]etermine which rural
areas or communities have customary and traditional uses of
specific fish and wildlife populations." 50 C.F.R. §
100.10(d)(4)(iii). The Board's C&T determinations are published
in section 100.24 of the Federal subsistence regulations. It is a
specific C&T determination by the Board that is at issue in this
case.

    **B. GMU 12 C&T DETERMINATIONS.** The term "subsistence uses" is
defined in 16 U.S.C. § 3113, as the "customary and traditional
uses by rural Alaska residents of wild, renewable resources...."
See also 50 C.F.R. § 100.4. Pursuant to the statute and the
regulations implementing the subsistence priority on public
lands, the taking of fish and wildlife for subsistence uses is
restricted to Alaskans who are residents of rural areas or
communities. 16 U.S.C. §§ 3113-3114; 50 C.F.R. § 100.5(a). The

---

[2/]    Hereinafter, references will be made only to the
regulations found in Title 50.

[3/]    Hereinafter, where references are to the 2005 edition of the
C.F.R., the date will be omitted.

Federal Subsistence Board is given the authority to determine which areas of the State are rural. 50 C.F.R. § 100.10(b)(4)(ii). These rural determinations have been made and are found at 50 C.F.R. § 100.23(a).

It is the residents of the rural areas as so designated who are entitled to exercise the priority set forth in 16 U.S.C. §§ 3113-3114. Except as noted below, that entitlement extends to all public lands in Alaska by all rural Alaska residents.

The Federal Subsistence Board has also been given the authority to make customary and traditional use determinations. 50 C.F.R. § 100.16(a). If the Board has made a C&T determination for a specific resource, eligibility to take that resource under Federal subsistence regulations is limited only to the rural Alaska residents in those areas. 50 C.F.R. § 100.5(b):

> Where the Board has made a customary and tra-
> ditional use determination regarding
> subsistence use of a specific fish stock or
> wildlife population, in accordance with, and
> as listed in § 100.24, only those residents
> of rural areas or communities so designated
> are eligible for subsistence taking of that
> population or stock on public lands for
> subsistence uses under these regulations in
> this part.

The temporary Federal subsistence regulations promulgated in 1990 did not set forth specific C&T determinations, but adopted the existing State determinations. 55 Federal Register 217114, 27117, 27121-170 (June 29, 1990). The proposed final Federal regulations proposed to continue the adoption of the existing

State C&T determinations. 57 Federal Register 3676 (Jan. 30, 1992). The determinations for moose in GMU 12 were set forth at 57 Federal Register 3684. The determinations as so proposed for GMU 12 were adopted at the time of the promulgation of the final Federal subsistence regulations. 57 Federal Register 22940, 2295 (May 29, 1992).[4]

The C&T determination in the final regulations (and in the State regulations from which it was derived) for residents of Chistochina included a portion of GMU 12. Chistochina is within GMU 13C right at the border with GMU 11. See Maps attached as Exhibit 2 and 3 hereto.[5] Residents of GMU 13C were determined to have C&T use of moose within that portion of GMU 12 "South of a line from Noyes Mountain, southeast of the confluence of Tatschunda Creek to Nabesna River." 57 Federal Register 2295. As Chistochina lies on the very border of GMU 11, some persons with a Chistochina address might actually reside in GMU 11. If so, they also had the same positive C&T determination for moose in GMU 12. That determination also included residents of GMU 11 "north of 62nd parallel...." *Id*. While other changes were made to the C&T determinations for moose in GMU 12, these remained the

---

[4]    The language of the determinations in the final regulations while editorially different from the proposal was substantively identical.

[5]    The maps that are attached as Exhibits 1, 2, and 3 hereto are the same maps found in the Admin Rec. Tab 40 at 2425, 2429 and 2433.

C&T determination for the area that included Chistochina until the June 2005 determination at issue in this action.[6] 50 C.F.R. § 110.24(a)(1) (2004).[7]

**C. THE CHALLENGED ACTION.** In October 2004, the Board received a proposal from the Chessh-na Tribal Council that residents of Chistochina be included with other residents determined to have a C&T use for the taking of moose within two additional areas of GMU 12. Admin Rec. Tab 1 at 1. This request was for that portion of GMU 12 east of the Nabesna River and Nabesna Glacier, south of the Winter Trail from Pickerel Lake to the Canadian border, and for the remainder of GMU 12. *Id*. This proposal was duly included by the Board in the Federal Subsistence Wildlife Proposal 2005-2006 as Proposal WP05-21. *Id*. Tab 2 at 43-44. Both the Eastern Interior Regional Advisory Council and the Southcentral Regional Advisory Council recommended approval of this proposal. *Id*. Tab 15 at 455-69; Tab 22 at 919-928.[8]

---

[6] The area prior to 2005 that was included within these determinations is shown as the area designated A on Map 1, Admin Rec. Tab 20 at 763.

[7] That portion of the table showing these determinations is found on page 525 of 50 C.F.R. Parts 18 to 199 (2005).

[8] Since Chistochina is within the area served by the Southcentral Regional Advisory Council, and GMU 12 is within the area served by the Eastern Interior Regional Advisory Council, both Councils acted on this proposal. The Federal subsistence

(continued...)

The Federal Subsistence Board on May 3, 2005, considered and voted to approve this proposal. *Id*. Tab 36 at 2148-161. Following publication at 70 Federal Register 36268 of notice this action, the State of Alaska filed a request for reconsideration. *Id*. Tab 41 at 2509-525. This request, designated WRFR05-02, was denied by the Board on January 17, 2006. *Id*. Tab 49 at 2661-710.

**D. THE STATE'S POSITION.** The State agreed that the C&T determination for Chistochina should be expanded within GMU 12 beyond that originally determined in 1992. Admin Rec. Tab 22 at 923: "The evidence presented in the staff analysis clearly indicates that Chistochina residents have hunted moose in some areas of Unit 12 for which they do not currently have a positive C&T finding."; Tab 35 at 2155: "Evidence presented in the Staff analysis demonstrates that the Chistochina residents have hunted moose in some areas of the southern part of Unit 12 for which they do not have a positive customary and traditional determination."[9] The State objected only to the extension of a new expanded C&T determination beyond the areas of GMU 12 where it contended that the documentation showed actual use by

---

[8]/(...continued)
resource regions are shown at Admin Rec. Tab 2 at 7.

[9]/    These are statements made on behalf of the State by a Dr. Terry Haynes at the meeting of the Southcentral Regional Advisory Council and of the Board. The State did not at the time of the meeting of the Eastern Interior Regional Advisory Council take any position on the proposal. Admin Rec. Tab 15 at 460: "we're neutral on this proposal at this time."

residents of Chistochina. *Id*. Tab 22 at 923: "evidence is not presented that this pattern of use occurs throughout all of Unit 12." As stated by Dr. Haynes, the State's concern was with respect to the northwestern portion of GMU 12 designated area (C), "which are all State managed lands," or with respect to lands "near the communities of Tetlin and Northway in the northeastern part of area (C)." *Id*. Tab 35 at 2155.

Area C is shown on Map 1 found in the Admin Rec. Tab 20 at 763. As shown therein, the only federally owned lands, and thus to only public lands to which the Federal subsistence priority applies, are portions of the Tetlin National Wildlife Refuge; two small portions of which lie near Tetlin and Northway.[10]/ The overwhelming remainder of Area C does not contain public lands.[11]/

The Federal public lands within GMU 12 consist of lands within the Wrangell-St. Elias National Park and Preserve (48% 0f GMU 12), and the Tetlin National Wildlife Refuge (11% of GMU 12). Admin Rec.[12]/ Tab 35 at 2149. The overwhelming bulk of these

---

[10]/   The location of the Federal public lands within GMU 12 are shown on Exhibit 2 hereto.

[11]/   The Federal subsistence regulations are explicitly made applicable only to Federal public lands. 50 C.F.R. § 100.3. The C&T determinations are also only for "Federal public land in the specified areas." *Id.* § 100.24(a). Therefore, the challenged determination is clearly not applicable to the extensive non-Federal public lands within GMU 12.

[12]/   The remaining 41% of GMU 12 which are not public lands are in the northern portion of the unit, and comprise a majority of

(continued...)

Federal lands are in the southern and east central portions of GMU 12 to which the State presented no objection in the hearings before either Regional Advisory Council or the Federal Subsistence Board to the proposed C&T determination. Thus, plaintiff's initial objection to the C&T determination for all of GMU 12 for residents of Chistochina, was only to its application to a very small portion of the northern portion of GMU 12 that are public lands.

When the State sought reconsideration before the Board, it sought to limit the area of the additional C&T determination to a smaller area than it did in its comments before both the Regional Advisory Councils and in the hearings before the Board on the proposed regulations. Admin Rec. Tab 41 at 2513, 2524. In its reconsideration request the State still agreed that some expansion of the C&T determination for residents of Chistochina within GMU 12 was proper. Plf's Memo at 2, 43. However, the State now objected, despite the prior testimony on its behalf of Dr. Haynes, to the extension of the C&T determination to most of the Tetlin National Wildlife Refuge and an eastern portion of the Wrangell - St. Elias National Park and Preserve along the Canadian border. The State in this action appears to seek to limit the expansion of the GMU 12 C&T determination to the same

---

[12]/(...continued)
the lands in Area C.

area described in its request for reconsideration. *Id.* at 43 n. 114.

SUMMARY OF ARGUMENT

Defendants will initially show that the State has suffered no injury as a result of the challenged C&T determination; therefore, it lacks standing to obtain judicial review of that action. Accordingly, this action should be dismissed for lack of subject matter jurisdiction.

Alternatively, if the Court has jurisdiction, defendants will show that when the standards of review set forth in the 5 U.S.C. §§ 701-706 are applied, the Court should find the challenged C&T determination to be consistent with the law, and to be reasonable and not arbitrary and capricious decision. The State while agreeing that the residents of Chistochina are entitled to a larger C&T determination area, effectively contends that ANILCA requires this area to be narrowly defined to the immediate areas where there is actual historic evidence of the taking of moose. As defendants will show, that contention is contrary to the language and purposes of ANILCA.

ARGUMENT

I. THE STATE LACKS STANDING TO CHALLENGE THE BOARD'S CUSTOMARY AND TRADITIONAL USE DETERMINATION

A. The State must show an actual or threatened injury as a result of the challenged action. Federal courts, under the doctrine of standing, have jurisdiction only over claims by

plaintiffs who can show actual or threatened injury to themselves. *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 102-03 (1998); *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Article III of the United States Constitution requires a "case or controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiffs must have "a personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962). This is a threshold jurisdictional question. *Warth v. Seldin*, 422 U.S. at 527-18 (1975); *McMichael v. Napa County,* 709 F.2d 1268, 1269 (9th Cir. 1983). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. at 560. A party invoking the Court's jurisdiction must show that he or she has suffered an actual or threatened injury as a result of the actions of a defendant. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39 (1976); *Warth v. Seldin*, 422 U.S. at 498-99.

This injury requirement embraces three related elements: (1) an actual or threatened injury, (2) which is fairly traceable to

the defendant's alleged unlawful conduct and is not the result of the actions of some third party who is not before the court, and (3) which is likely to be redressed by the relief requested. *Steel Company v. Citizens for a Better Environment,* 523 U.S. at 102-03; *Lujan v. Defenders of Wildlife*, 504 U.S. at 560; *Allen v. Wright*, 468 U.S. 737, 751 (1984). *Accord Central Arizona Water Conservation District v. United States E.P.A.*, 990 F.2d 1531, 1537 (9th Cir. 1993); *State of Nevada v. Burford*, 918 F.2d 854, 856 (9th Cir. 1990), *citing, Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 473 (1982).

Possible future injury does not satisfy the requirements for standing. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). The injury in fact must be actual or imminent, and not hypothetical or speculative. *Lujan v. Defenders of Wildlife* 504 U.S. at 560-61. Proving standing is not an ingenious exercise in showing the conceivable. *Id.* at 565. There is also no standing merely to compel the Government to comply with the law. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 at 573-74; *State of Nevada v. Burford,* 918 F.2d 854, 857 (9th Cir. 1990), *cert denied sub nom. Nevada v. Jamison*, 500 U.S. 932 (1991).

A party must also generally assert an injury that is personal to himself and not an injury to a third party. *United States Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990);

*Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984). This is so even "when the very same allegedly illegal act that affects the litigant also affects a third party." *Triplett*, 494 U.S. at 720. "The decision to seek review should be placed in the hands of those who have a direct stake in the outcome." *Diamond v. Charles*, 476 U.S. 54, 62 (1986). A litigant may be permitted to bring actions on behalf of third parties if (1) the litigant has suffered an injury in fact giving him or her a sufficiently concrete interest in the outcome, (2) the litigant has a close relationship to the third party, *and* (3) there exists some hindrance to the third party's ability to protect his or her own interest. *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991).

Further, the party invoking Federal court jurisdiction bears the burden of showing the necessary elements for standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). Once jurisdiction is challenged, the presumption, until proven otherwise by plaintiffs, is that a Federal court lacks subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994); *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 969 (9th Cir. 1981), *cert. denied*, 455 U.S. 968, *rehearing denied*, 456 U.S. 939 (1982); *People of the State of California ex rel. Younger v. Andrus,* 608 F.2d 1247, 1249 (9th Cir. 1979).

For the reasons which follow, the State has failed to show a

sufficient injury to the State to entitle it to seek review of the C&T determination at issue.[13]/

    B. <u>The C&T determination establishes no rights that effect the State</u>. As shown at 3-4, above, the effect of a C&T determination is merely to define which of all rural Alaska residents are entitled to the Federal subsistence use priority. A C&T determination does not determine whether in fact a resource can or cannot be taken under the Federal subsistence use regulations. That is determined, if at all, in the regulations setting seasons and bag limits. For wildlife, these seasons and bag limits are set forth in 50 C.F.R. § 100.26. The State does not seek review in this action of the season, bag limits for taking of moose within GMU 12 found at 50 C.F.R. § 100.26(n)(12) (2005).

    Further, the State does not contend that the challenged C&T determination has had any actual negative impact on it. The State contends only that the determination may result in the possible need to later impose new restrictions on the taking of moose by others within GMU 12. Plf's Memo at 5-6 ("can be expected to increase participation, harvest and competition.... [M]ay require adjustment of seasons and harvest restrictions under state law...."); at 9 ("would be likely to increase pressure to close

---

[13]/     The lack of any injury also precludes any review under the Administrative Procedure Act which requires a party to be "[a]ffected or aggrieved by agency action." 5 U.S.C. § 707.

the lands to non-Federally qualified users, and ... there would
be cumulative impacts on other users as new communities are
added."); at 20 ("could increase take and lead to further
restrictions of nonfederally qualified subsistence users."); at
29 ("could result in unnecessary complete closures of federal
lands to non-federally qualified subsistence users."); at 30-31
("likely to require adjustment of state season and harvest
restrictions,...likely to lead to further restrictions on federal
lands as well."). These are purely speculative consequences or
injuries on the part of the State. As already shown at 11-12,
*supra*, the injury needed to establish standing must be actual and
not speculative. Possible future injury is insufficient to
establish standing. *Whitmore v. Arkansas*, 495 U.S. 149, 158
(1990).

    Even if the injuries alleged by the State were not
speculative, the State would still lack standing to seek review
of the June 2005 C&T determination. The State is not seeking to
protect its own interest, but the interests of non-federal
subsistence users and those of non-subsistence users. Plf's Memo
at 29 ("would result in unnecessary complete closures of federal
lands to non-federal qualified subsistence users."); at 33
("unnecessarily restricting nonsubsistence uses in violation of
section 815.... [T]hus unnecessarily restricting nonsubsistence
uses...."). As already shown, the State must show standing based

on injuries to itself, and not those of third parties.

Further, the State is effectively seeking to bring a parens patriae suit against the United States on behalf of non-Federal qualified subsistence uses and non-subsistence users whose rights might be restricted in the future. It is now established that a State does not have standing to bring such a parens patriae against the Federal government. *State of Nevada v. Burford*, 918 F.2d 854, 858 (9th Cir. 1990), *cert. denied sub nom. Nevada v. Jamison*, 500 U.S. 932 (1991).

For the foregoing reasons, the claims of the State must be dismissed for lack of jurisdiction.

## II. A DEFERENTIAL STANDARD OF REVIEW IS TO BE APPLIED

If the Court had jurisdiction over this action,[14] the parties agree that the Court's review is governed by the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. Plf's Memo at 10-11. That review is, however, more limited than described by the plaintiff.

Pursuant to 5 U.S.C. § 706, judicial review is limited to whether the agency's decision was arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with law, and whether the agency complied with all applicable procedural requirements. *Citizens to Preserve Overton Park v. Volpe*, 401

---

[14]    The Court must first determine that it has jurisdiction before it can rule on the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998).

U.S. 402, 413-14 (1971); *Pyramid Lake Paiute Tribe v. United States Department of the Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990). Under the arbitrary and capricious standard, judicial review is highly deferential. *J&G Sales, Ltd. v. Carl J. Truscott*, No. 04-16976, 2009 WL 92895 (9th Cir. Jan. 16, 2007), *7. Courts are to engage in a substantial inquiry, but should not substitute their judgment for that of the agency. *Citizens to Preserve Overton Park*, 401 U.S. at 415-16; *Arizona v. Thomas*, 824 F.2d 745, 748 (9th Cir. 1987). An agency's action would be arbitrary and capricious:

> [I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacture's Ass'n v. State Farm Mutual Automobile Ins.*, 463 U.S. 29, 43 (1983). *Accord United States v. Clark*, 912 F.2d 1087, 1090 (9th Cir. 1990).

A very heavy burden is placed on those who seek to overturn a regulation. *Ramirez v. Immigration & Naturalization Service*, 550 F.2d 560, 563 (9th Cir. 1977). The presumption is that the administrative action is valid. *J&G Sales, Ltd. v. Carl J. Truscott*, *supra.*; *Wilderness Public Rights Fund v. Kleppe*, 608 F.2d 1250, 1254 (9th Cir. 1979): "There is a judicial presumption

favoring the validity of administrative action." *Accord Independence Acceptance Co. v. State of California*, 204 F.3d 1247, 1251 (9th Cir. 2000)(The standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision."). As stated in *J&G Sales, Ltd. v. Carl J. Truscott*, at *7, *quoting Leather Industry of America v. EPA*, 40 F.3d 392, 409 (D.C. Cir. 1994):

> Moreover, "[w]here the agency's line-drawing does not appear irrational and the [party challenging the agency action] has not shown that the consequences of this line-drawing are in any respect dire....[courts] will leave this line-drawing to the agency's discretion.

ANILCA also provides that the Secretaries of the Interior and Agriculture "shall prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this subchapter." 16 U.S.C. § 3124.[15/] When agencies are assigned by Congress this type of broad implementing responsibility, the review of implementing regulations is particularly deferential, and limited to ensuring that the regulations are "reasonably related to the purposes" of the enabling legislation:

> Where the empowering provision of a statute states simply that the agency may

---

[15/]    Secretary is defined in ANILCA to be either the Secretary of the Interior or the Secretary of Agriculture depending on the land unit at issue. 16 U.S.C. § 3102(12).

> "make...such rules and regulations as may be
> necessary to carry out the provisions of this
> Act," we have held that the validity of a
> regulation promulgated thereunder will be
> sustained so long as it is "reasonably
> related to the purposes of the enabling
> legislation."

*Mourning v. Family Publications Service*, 411 U.S. 356, 369
(1973), quoting *Thorpe v. Housing Authority of City of Durham*,
393 U.S. 268, 280-81 (1969). *Accord Baelelo v. Baldridge*, 724
F.2d 753, 760 (9th Cir. 1984), *cert. denied* 467 U.S. 1252 (1984);
*American Hospital Management Corp. v. Harris*, 638 F.2d 1208, 1212
(9th Cir. 1981)("Our review . . . is limited to determining
whether the regulation is reasonably related to the purpose of
the relevant enabling legislation, as well as to the more
particular purpose through which the particular regulation
implements those objectives in a particular area.").

Judicial review is confined to the administrative record
before the agency. *Florida Power & Light Co. v. Lorion*, 470 U.S.
729, 743 (1985); *Friends of the Earth v. Hintz*, 800 F.2d 822,
828-29 (9th Cir. 1986). A court may consider material not in the
record to obtain background information. *ASARCO, Inc. v. EPA*, 616
F.2d 1153, 1159-60 (9th Cir. 1980). However, consideration of
extra-record material to determine the correctness or wisdom of
an agency's decision is not permitted. *Id*. at 1160.

The courts are also to defer to an agency's interpretation
of statutes it administers. This is especially so where, as here,
the Secretaries are directed by statute, 16 U.S.C. § 3124, to
prescribe regulations needed to implement Title VIII. *United*

*States v. Mead Corp.*, 533 U.S. 218, 229 (2001). The Court may not substitute its own interpretation of a statute for a reasonable interpretation by the agency. *Rust v. Sullivan*, 500 U.S. 173, 184 (1991); *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843-44 (1984); *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990). As stated in *State of Alaska v. Lyng*, 797 F.2d 1479, 1481 (9th Cir. 1986), *cert. denied*, 480 U.S. 945 (1987), this "[d]eference requires affirmance of any interpretation within the range of reasonable meanings the words permit, comporting with the statute's clear purpose.". This deference has been given to both the Federal Subsistence Board's, and the Secretaries' interpretation and implementation of Title VIII of ANILCA, *Ninilchik Traditional Council v. United States*, 227 F.2d 1186, 1191-93 (9th Cir. 2000).

If the issue is the interpretation of a regulation issued by an agency, the scope of review is even more limited. An agency's interpretation of its own regulations is controlling unless it is plainly erroneous or inconsistent with the regulations. *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994):

> Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation."

*Accord Norfolk Energy, Inc. v. Hodel*, 898 F.2d 1435, 1439 (9th Cir. 1990); *Buschman v. Schweiker*, 676 F.2d 352, 355 (9th Cir. 1982).

### III. THE C&T DETERMINATION FOR CHISTOCHINA IN GMU 12
### WAS REASONABLE AND CONSISTENT WITH ANILCA

As will be shown below, plaintiff's objections to the Board's action is based in substantial part on incorrect readings of provisions of ANILCA. The heart of the State's contentions in this action is its view that the ANILCA priority is limited only to persons who have customarily and traditionally taken a specific resource at a specific location on the public lands. As defendants will show, in the Federal ANILCA Title VIII priority the phrase "customary and traditional use" is related to how a resource is used after it is taken, and not to or a prerequisite condition for the taking itself. Defendants will then show, that the Federal Subsistence Board had sufficient information before it to support the challenged C&T determination.

Finally, the State has raised an issue regarding the alleged need for substantial evidence before the Regional Advisory Councils. While that issue is not really a matter that needs to be addressed in this case, defendants will also show that the State has a fundamental misunderstanding of what is required of the Regional Advisory Councils and the limited authority of the Secretaries "not to follow" the recommendations of a council "concerning the taking of fish and wildlife on the public lands." 16 U.S.C. § 3115(c).

A. ANILCA does not require the customary and traditional taking of moose within GMU 12. The State contends that ANILCA

only authorizes customary and traditional uses on the public
lands. Plf's Memo at 26-27. Thus, it contends that there can be
no C&T determination for any specific resource unless there has
been a customary and traditional taking and use of that specific
resource on the specific lands. In this instance, the contention
is in effect that there must have been a customary and
traditional taking of moose by residents of Chistochina on the
precise lands for which a C&T determination has been made. That
is not, however, what ANILCA requires.

Customary and traditional uses is not defined in ANILCA.
This term appears in 16 U.S.C. § 3113 as part of the definition
of "subsistence uses," as a description of how resources are used
by individuals after they are taken, and not as a condition for
the taking of a specific resource. The statute reads in pertinent
part as follows:

> As used in this Act, the term "subsistence
> uses" means the customary and traditional
> uses by rural Alaska residents of wild,
> renewable resources for direct personal or
> family consumption as food, shelter, fuel,
> clothing, tools, or transportation; for the
> making and selling of handicraft articles out
> of nonedible byproducts of fish and wildlife
> resources taken for personal or family
> consumption; for barter, or sharing for
> personal or for family consumption; and for
> customary trade.

That the subsistence preference or priority itself is also
for the taking of fish and wildlife resources in general is also
shown by 16 U.S.C. § 3114, which provides in pertinent part:

### Preference for subsistence uses

> Except as otherwise provided in this Act and other Federal laws, the taking on public lands of fish and wildlife resources for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife resources for other purposes.

This priority is not conditioned on the taking being customary and traditional as the State contends. Such a limitation would be inconsistent with the specific findings of Congress that in order to protect the economic, traditional, cultural and social existence of Native and non-Natives in rural Alaska it is necessary to provide for a priority for the taking of fish and wildlife resources in general. 16 U.S.C. 3111.

Thus, what ANILCA provides is a priority for the taking of fish and wildlife resources to be used for the customary and traditional personal or family purposes listed in 16 U.S.C. § 3113. The State is incorrect when it contends that ANILCA requires that there have been a customary and traditional taking of a particular species or stock of a species as a condition of the Federal subsistence priority.[16] This may be a condition of the State priority system, and the State may wish that it also be a condition of the Federal system, but it is not. Therefore,

_____

[16]    The decision in *United States v. Alexander*, 938 F.2d 942, 948 (9th Cir. 1991), relied upon by plaintiff, Plf's Memo at 27, does not support the State's contention. That decision recognized that the "barter", not the taking must be customary and traditional.

adoption by the Federal Subsistence Board of a C&T determination absent specific documentation of the taking of moose in the past on the specific lands is not contrary to law.

   **B.** The Chistochina C&T determination is sufficiently supported by the record. As will be shown herein, there was sufficient evidence before the Board supporting the challenged C&T determination. First, however, it is important to note that the State's contentions regarding the adequacy of evidence of customary and traditional use are based on its erroneous reading of ANILCA. The State concedes that there has been sufficient use of a substantial additional portion of the Wrangell - St. Elias National Park and Preserve. Admin Rec. Tab 41 at 2524. It also agrees that there has been sufficient use of a southwestern portion of the Tetlin National Wildlife Refuge. *Id*. The State's objection to extending a C&T determination to the entirety of these conservation system units[17] is based on its, erroneous contention that the ANILCA priority is limited for a specific species only to the area where there is a record of that species having been customarily and traditionally taken.[18] Thus, the

_____

[17]    Defined in 16 U.S.C. § 3102(4) to include units of the National Park System and National Wildlife Refuge System in Alaska.

[18]    While the State generally uses broad language referring to the entirety of GMU 12, since the Federal C&T determination is applicable only to Federal public lands, it is in this instance only applicable to the two Federal units and not to the remaining

(continued...)

State would require the Federal land managers to ignore the existing boundaries of their land units and impose on these managers the duty to determine and draw sub-boundaries for ANILCA Title VIII subsistence purposes on what would effectively be a water-shed by water-shed basis. Given the information before the agency and the location of the lands at issue, such a requirement is unreasonable. The areas to which the State objects are largely in remote areas that are not readily accessible by residents of Chistochina, and are not likely to be used extensively by residents of Chistochina. *See* Exhibit 2 hereto. Only a portion of the Tetlin National Wildlife Refuge is accessible by road, but only after driving from Chistochina to Tok, and then south toward the Canadian border. Therefore, there was no need to exclude these areas from the C&T determination.[19]/

While the evidence of actual use throughout the entirety of GMU 12 is limited, that may well be a result of a population decline in the relevant moose population in the 1970s. Admin Rec. Tab 51 at 2803-04. In this situation, penalizing the residents of Chistochina because of the lack of taking data would be unfair and contrary to the purposes of ANILCA. As recognized in a different context in *State of Alaska v. Babbitt*, 72 F.3d 698, 704

---

[18]/(...continued)
41% of GMU 12.

[19]    There are much more accessible non-Federal public lands, but the C&T determination does not apply to those lands.

(9th Cir. 1995), *cert denied*, 516 U.S. 906, 516 U.S. 1036 (1996),
*adhered to en banc*, *Katie John v. United States*, 247 F.3d 1032
(9th Cir. 2001), ANILCA is intended to provide rural Alaska
residents with a meaningful priority on the public lands. The
State's proposed requirement that there be explicit documentation
of the taking of specific species within specifically defined
areas would in this situation effectively deny a meaningful
priority to many rural Alaskans. The nature of life in rural
Alaska is simply such that often the proof implicitly demanded by
the State demands could not be produced.

     Further, when properly viewed, the evidence before the Board
is sufficient to support the C&T determinations at issue. The
State would have the court apply a substantial evidence test. The
Board's action was a rule making under 5 U.S.C. § 553. Whether an
agency's decision was supported by substantial evidence is a
factor to be considered under the APA only in cases subject to
the provisions of 5 U.S.C. §§ 556 and 557, or where there has
been a hearing of record provided by statute. 5 U.S.C. § 703(E).
As shown at, 16-18, supra, the Board's decision is to be reviewed
under the arbitrary and capricious standards.

     However, even if substantial evidence were the proper test,
the information before the Board was sufficient to support the
C&T determination to the Federal public lands in GMU 12. Sub-
stantial evidence is evidence that a reasonable mind might accept

as adequate to support a conclusion. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619-20 (1966); *United States v. Wharton*, 514 F.2d 406, 409 (9th Cir. 1975); *Nelson v. Morton*, 368 F. Supp. 692, 696 (D. Alaska 1973), *rev'd on other grounds sub nom.*, *Nelson v. Kleppe*, 529 F.2d 164 (9th Cir 1976). The evidence must be enough, if the trial were to a jury, to justify a refusal to direct a verdict. It is something less than the weight of the evidence. *Consolo*, 383 U.S. at 620; *United States v. Wharton*, 514 F.2d at 409 n. 3. Further, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an agency's finding from being supported by substantial evidence. *Id.* It is also not the role of the courts under the substantial evidence standard to strike down conclusions that are reasonably drawn from the evidence. *Illinois Central Railroad v. Norfolk and Western Railway*, 385 U.S. 57, 69 (1966). Courts are not to substitute their conclusions for those of the agency. *Illinois Central Railroad; Erickson Transport Corp. v. Interstate Commerce Comm'n*, 728 F.2d 1057, 1063 (8th Cir. 1984).

The evidence before the Board shows that a major portion of the residents of Chistochina are Alaska Natives with cultural and traditional ties to the entire Ahtna community. Admin Rec. Tab 14 at 186-89;[20] Tab 50 at 2805-07; Tab 50 at 2741-42; Tab 51 at

---

[20] The analysis in Tab 14 is also essentially repeated at other

(continued...)

2806-07. Taking of wildlife including of moose for subsistence uses was a major activity by residents of Chistochina. *Id*. Tab 50 at 2743-48. The poundage of big game taken was at times close to the poundage of salmon taken. *Id*. at 2745. Ahtna, Inc. through its subsistence committee also submitted the comment that residents of Chistochina have customarily and traditionally used GMU 12 for the taking of wildlife including moose. *Id*. Tab 3 at 51. There is also documentation of Ahtna cultural sites in both portions of GMU 12 that are included within the new areas of the challenged C&T determination. *Id*. Tab 14 at 185. There is also a record of the taking of moose by residents of Chistochina in the area of Pickerel Lake. *Id*. at 189. Pickerel Lake is within the Tetlin National Wildlife Refuge. *Id*. at 184.

The State contends that the Chistochina C&T determination violates 16 U.S.C. § 3125(3). Plf's Memo at 27-32. This provision provides as follows:

> Nothing in this subchapter shall be construed as--
>
>     *    *    *    *    *
>
>     (3) authorizing a restriction on the taking of fish and wildlife for non-subsistence uses on the public lands (other than national parks and monuments) unless necessary for the conservation of healthy

---

[20]/(...continued)
stages in the proceedings. *See* Tab 20 at 765-69; Tab 27 at 1326-30; Tab 33 at 1685-89.

> populations of fish and wildlife, for reasons
> set forth in section 3126 of this title, to
> continue subsistence uses of such
> populations, or pursuant to other applicable
> law.

The State contends that the adoption of an unnecessary C&T
determination "immediately causes unnecessary restrictions on
nonsubsistence uses." Plf's Memo at. 28. This is incorrect.[21/]

   As shown at 3-4, *supra*, a C&T determination only affects the
eligibility of rural Alaska residents for the Federal subsistence
priority. Therefore, a C&T determination does not affect in any
way the rights to take fish and wildlife for nonsubsistence uses
and does not create any rights on non-public lands. This is
further emphasized, in the Secretaries' statement in 64 Federal
Register 1276, 1284 (Jan. 8, 1999), that the Federal subsistence
regulations of which C&T determinations are a part:

> ONLY APPLY TO FEDERAL LANDS AND WATERS where
> there is a Federal interest. Individuals who
> do not meet the requirements under these
> regulations may still harvest fish and
> wildlife on Federal lands and waters in
> accordance with other State fishing and
> hunting regulations, except in those
> instances where Federal lands and waters have
> been specifically closed to non Federally
> qualified subsistence users. (Emphasis in
> original)

   The State bases it claim of impact on nonsubsistence users

---

[21/]    As much of the area at issue is within the Wrangell - St.
Elias National Park and Preserve, the exception for "other than
national parks and monuments" is also partially applicable in
this instance.

not on actual restrictions, but on the contention that such restrictions on nonsubsistence users will be necessary some time in the future. *E.g.* Plf's Memo at 25: "can certainly be expected to cause unnecessary restrictions in the future;" and "could result in the complete closure of Federal lands to non-Federally qualified subsistence users." This is rank speculation on the part of the State, and not a basis for invalidating the C&T determination at issue.

The State also speculates that this C&T determination will lead to the taking of more moose and increased pressure on the moose population by residents of Chistochina. Plf's Memo at 30. This too is so speculative that it should form no basis for setting aside that determination. The residents of Chistochina already had a C&T determination for moose in part of GMU 12, and the State agrees that expansion of the area of this determination is proper. These residents can already take and have taken moose, and there is nothing to indicate that the mere expansion of the area available to them will lead to the taking of more moose. This is especially so as there is a limit on the number of moose within GMU 12 that may be taken under the Federal regulations. 50 C.F.R. § 100.26(n)(12).

The State also contends that the C&T determination at issue is inconsistent with the eight factors set forth in 50 C.F.R. §

100.16(b). Plf's Memo at 15-20. That is incorrect.[22]/

The State assumes that application of all of these criteria is mandatory and to be rigidly applied.[23]/ That argument is inconsistent with the language of the regulation itself. The regulations provides in relevant part:

> A community or area shall generally exhibit the following factors, which exemplify customary and traditional use. The Board shall make customary and traditional use determinations based on application of the following factors:

Use of the phrase "shall **generally** exhibit" and the word "exemplify" show that the criteria are not required to be mandatorily and rigidly applied in all instances. "Generally" means in a general manner and in disregard for specific instances. Webster's New Collegiate Dictionary (1997) at 478. "Exemplify" means to be an instance of or serve as an example. Id. at 400. Therefore, the factors listed in the regulation clearly are not intended to create rigid criteria that in plaintiff's apparent view require a negative C&T determination if one or more of the eight factors is not present.

---

[22]/    As this contention involves the interpretation and application of defendant's own regulation, as shown at 20, supra, deference is to be applied to their interpretation of the requirements of the regulations.

[23]/    The State also assumes that the customary and traditional taking of the specific resource is required. As already shown, that contention is erroneous. The regulations could not adopt a limitation that is inconsistent with the statute. Mohasco Corp. V. Silver, 447 U.S. 807, 825 (1980).

It is fully evident in the record that the eight criteria set forth in the regulation were fully evaluated and considered at each stage of the proceedings, including proceedings before the Regional Advisory Councils and the Federal Subsistence Board. Admin Rec. Tab 8 at 79-82, Tab 9 at 87-90, Tab 11 at 97-99, Tab 14 at 187-90, Tab 15 at 457-58, Tab 20 at 766-69, Tab 22 at 920-22, Tab 27 at 1327-30, Tab 34 at 1686-89, Tab 35 at 2149, Tab 43 at 2546-49, Tab 44 at 2598-01, Tab 49 at 2662. A review of the analysis prepared specifically for the Board prior to its hearing and action on this proposal, Tab 34 at 1686-89, clearly shows that the residents of Chistochina had customarily and traditionally used fish and wildlife resources, including moose, from GMU 12, including within portions of the Federal public lands that would be encompassed within the C&T determination at issue. The Board's determination clearly meets the criteria set forth in 50 C.F.R. § 100.16(b)(3), (b)(4), (b)(7) and (b)(8). Having met those requirements, the Board's C&T determination must be sustained.

In the end, the State's contentions boil down to an objection as to how broad area wise are the Federal public lands that should be included within the Board's C&T determination. The State sought a more limited area defined essentially by drainages. The Board determined a larger area. As stated in *J&G Sales, Ltd. v. Carl J. Truscott*, No. 04-16976, 2007 WL 92895 (9th

Cir. Jan. 16, 2007), at *7, quoted at 18, *supra*, when an agency
finds it necessary to draw lines [in this case the boundaries of
a C&T determination], those lines are to be sustained if (1) they
do not appear irrational and (2) if no dire consequences would be
suffered by the challenging party. Both of those criteria are
met. The Board's determination to extend the Chistochina C&T
determination to all Federal public lands in GMU 12 is rational.
This is especially so since those lands, with but a minor
exception for an isolated portion of the Tetlin National Wildlife
Refuge, are not located in the northern portion of GMU 12 about
which the State limited its concern in the proceedings prior to
its motion for reconsideration. Further, as already shown in the
discussion relative to standing, the State has also not
identified any dire consequences it will suffer as a result of
the C&T determination at issue. Therefore, the C&T determination
at issue in this action should be sustained and plaintiff's
action dismissed.

      C.  <u>Regional council recommendations and the Board's</u>
<u>determination are not required to be supported by substantial</u>
<u>evidence</u>. Plaintiff does not completely ignore the fact that two
Regional Advisory Councils recommended that the C&T determination
for Chistochina be adopted. Instead, the State contends that
these recommendations were not supported by substantial evidence.
Plf's Memo at 21-23. Therefore, the State contends that the Board

could not rely on these recommendations. For the reason already shown, the Court need not address this issue.

However, if the Court were to address the State's contention that the Board may not rely on Regional Advisory Council recommendations that are not supported by substantial evidence, it should reject that contention. Nothing in ANILCA requires that the recommendations of a Regional Advisory Council be supported by substantial evidence, or provide that if not so supported, that defendants may not rely on a council's recommendation.

The Secretaries were required by ANILCA to establish at least six regional subsistence resource regions, 16 U.S.C. § 3115(a)(1), and a regional advisory council for each subsistence resource region. 16 U.S.C. § 3115(a)(3).[24/] When the final regulations were promulgated on May 29, 1992, 57 Federal Register 22940, 22950, 22957, ten subsistence resource regions were designated. The Federal Subsistence Board was required to establish a Regional Advisory Council for each subsistence region. 57 Fed. Reg. at 22954. These councils were duly established.

Title VIII gives the Regional Advisory Councils the following authority ("shall have the following authority"):

(A) the review and evaluation of proposals for

---

[24/]  The Secretaries were given the discretion, but not required, to create local advisory committees. 16 U.S.C. § 3115(a)(2). This authority has not been exercised.

regulations, policies, management plans, and other
matters relating to subsistence uses of fish and
wildlife within the region;

(B) the provision of a forum for the expression of
opinions and recommendations by persons interested in
any matter related to the subsistence uses of fish and
wildlife within the region;

(C) the encouragement of local and regional
participation pursuant to the provisions of this
subchapter in the decisionmaking process affecting the
taking of fish and wildlife on public lands within the
region for subsistence uses;

(D) the preparation of an annual report to the
Secretary which shall contain—

> (I) an identification of current and
> anticipated subsistence uses of fish and
> wildlife populations within the region;
>
> (ii) an evaluation of current and anticipated
> subsistence needs for fish and wildlife
> populations within the region;
>
> (iii) a recommended strategy for the management of
> fish and wildlife populations within the region to
> accommodate such subsistence uses and needs; and
>
> (iv) recommendations concerning policies,
> standards, guidelines, and regulations to
> implement the strategy. The State fish and game
> advisory committees or such local advisory
> committees as the Secretary may establish pursuant
> to paragraph (2) of this subsection may provide
> advise to, and assist, the regional advisory
> councils in carrying out the functions set forth
> in this paragraph.

16 U.S.C. § 3115(a)(3). Nothing in these provisions of ANILCA

require that a council's recommendations be based on substantial

evidence. Nor do these provisions provide that the Secretaries or

by delegation the Board may only consider or rely upon council

recommendations that are supported by substantial evidence. Such a requirement would be inconsistent with the express policy of enabling rural Alaska residents to have a meaningful role in the implementation of the required subsistence priority. 16 U.S.C. §§ 3111(5), 3112(1), 3115(a).

Further, if a council's recommendation is "concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses," the Board's discretion is very limited.[25] 16 U.S.C. § 3115(c). This statute is very explicit in providing how the Secretaries are to treat such recommendations of a Regional Advisory Council:

> The Secretary **may choose not to follow** any recommendation **which he determines is not** supported by substantial evidence, violates recognized principles of fish and wildlife conservation, or would be detrimental to the satisfaction of subsistence needs. (Emphasis

---

[25]    Whether or not a Regional Advisory Council's recommendations regarding C&T determinations are "recommendations...concerning the taking of fish and wildlife," within the scope of 16 U.S.C. § 3115(c), is not an issue upon which defendants have made a conclusion. If the recommendations do not concern the taking of fish and wildlife, 16 U.S.C. § 3115(c) is not applicable. *Safari Club Int'l et al. v. Mitch Demientieff et al.*, No. 3:98-cv-00414-HRH (D. Alaska), Amended Order Motion for Summary Judgment (Docket Entry No. 299) filed August 8, 2006, at 12-14, relevant excerpts attached as Exhibit 4 hereto.

However, if the State's contention that the ANILCA priority extends only to the specific resources which have customarily and traditionally been taken, then a C&T determination would "concern the taking of fish and wildlife." In that situation a Regional Advisory Council's recommendation regarding a C&T determination would appear to be subject to the provisions of 16 U.S.C. § 3115(c).

added)

With respect to the recommendations of a Council concerning the taking of fish and wildlife, the statute thus establishes a two step process. The Secretaries "shall" consider the recommendations of a Regional Advisory Council, and "may choose not to follow" the recommendations only if one of three factors is present.[26]/

Statutory language is generally to be construed according to the plain meaning of the words used. *United States v. Rogers*, 461 U.S. 677, 706 (1983); *Haynes v. United States*, 891 F.2d 235, 239 9th Cir. 1989). The word "may" usually implies some degree of discretion. *Id*. The word "shall" is ordinarily a directory or mandatory term. *City of Edmonds v. United States Department of Labor*, 749 F.2d 1419, 1421 (9th Cir. 1982). When the contrasting words "may" and "shall" appear in the same statute, and especially when used in the same section or subsection, "the normal inference is that each is being used in its usual sense-- the one act being permissive, and the other mandatory." *Haynes v. United States*, 891 F.2d at 239-40. *Accord Anderson v. Yungkau*, 329 U.S. 482, 485 (1947).

That juxtaposition of "shall" and "may" appears in 16 U.S.C. § 3115(c). The Secretaries "shall" consider the recommendations

---

[26]/    The regulations merely parallel the requirements of the statute. 50 C.F.R. § 100.10(e).

of a Regional Advisory Council, but "may" choose not to follow that recommendation only if they find that the recommendations are (1) "not supported by substantial evidence, (2) violate recognized principles of fish and wildlife conservation, or (3) would be detrimental to the satisfaction of subsistence needs."

Thus, if regional advisory councils' recommendations on C&T determinations are concerning the taking of fish and wildlife on the public lands, the language of 16 U.S.C. § 3115(c) mandates that the Secretaries consider those recommendations of Regional Advisory Councils. This statute also limits the Secretaries' discretion "not to follow" the recommendations of a Regional Advisory Council to only those instances when the Secretaries find that at least one of the three statutory factors is present. However, as "may" is discretionary, the Secretaries also retain the discretion to follow the recommendations of a Regional Advisory Council on the taking of fish and wildlife even if one or more of the three factors is present.[27] Thus, contrary to plaintiff's contentions, if in this instance the Eastern Interior Regional Advisory Council's recommendation on the proposed C&T determination concerned the taking of fish and wildlife, this recommendation is not required by ANILCA to be supported by substantial evidence, and the Board could adopt that

---

[27] The regulations also use the word "may" and thus retain the same discretion. 50 C.F.R. §§ 100.10(e), 100.18(a)(4).

recommendation even if it were not supported by substantial evidence. *Cf. Safari Club Int'l et al. v. Mitch Demientieff et al.*, No. A98-0414-CV (HRH) 9D. Alaska), Order Motion for Partial Judgment on the Pleadings, filed Feb. 27, 2001, at 5-9, copy attached as Exhibit 5 hereto.

Even if the councils' recommendations at issue did not concern the taking of fish and wildlife and were not supported by substantial evidence, it would be unreasonable to prohibit the Board from relying on those recommendations. Recommendations of the Regional Advisory Councils clearly go to the very heart of and are a major component of the Federal subsistence program. It would be unreasonable to interpret ANILCA as permitting the Board to rely on Council recommendations regarding the taking of fish and wildlife even in the absence of substantial evidence, but require substantial evidence for Council recommendations that do not concern the taking of fish and wildlife.

Therefore, the Court should reject any contention that the Board may not rely on Regional Advisory Council recommendations that are not supported by substantial evidence.

CONCLUSION

For the reasons set forth above, a judgment should be entered dismissing this action for lack of jurisdiction. Alternatively, judgment should be entered in this case sustaining

the June 2005 customary and traditional use determination for

moose by residents of Chistochina in GMU 12 and dismissing this

action with prejudice.

DATED this 24th day of January, 2007.

s/Dean K. Dunsmore
DEAN K. DUNSMORE
U.S. Department of Justice
Environment & Natural Resources
 Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone:(907) 271-5452
Facsimile:(907) 271-5827
Email: dean.dunsmore@usdoj.gov

Attorney for Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January, 2007, a
copy of the foregoing Brief of the Defendants was served
electronically to:

Steven A. Daugherty
Heather Kendall Miller

s/Dean K. Dunsmore
DEAN K. DUNSMORE