IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL FLEAGLE Chairman, ) <br> FEDERAL SUBSISTENCE BOARD, ) <br> DIRK KEMPTHORNE, ) <br> Secretary of the Interior, ) <br> MIKE JOHANNS, Secretary of the U.S. ) <br> Department of Agriculture, ) <br> [each in their official capacity] ) <br> ) <br> Defendants. ) <br> ) | Case No. 3:06-cv-00107-HRH <br><br>  <br> MAR 1 3 2007 <br> DEPARTMENT OF LAW <br> OFFICE OF THE ATTORNEY GENERAL <br> 3RD JUDICIAL DISTRICT <br> ANCHORAGE, ALASKA |

**Affidavit of Lt. Gary Folger**

1. Gary Folger, under oath, states as follows: I am a Lieutenant with the Alaska State Troopers and am currently the Northern Region Commander in the Alaska Bureau of Wildlife Enforcement. In this position I am principally responsible for fish and wildlife enforcement issues and supervise other State Troopers who work on fish and wildlife enforcement issues. I have over 25 years of fish and wildlife enforcement with the State of Alaska. I first became involved in fish and wildlife enforcement in 1979, and have worked in this field full time since 1981.

2. In my capacity as Northern Region Commander, and in previous capacities as a fish and wildlife enforcement officer, I have worked and continue to work closely with the Alaska Board of Game and the Alaska Department of Fish and Game.

3. I supervise the state troopers who monitor hunting activities and enforce hunting regulations in the State of Alaska.

4. I have been involved in development of comments to the Alaska Board of Game concerning the enforceability of harvest regulations and have also been involved in development of comments to Federal Subsistence Board on enforcement aspects of some regulatory proposals.

5. Fish and wildlife enforcement resources are spread very thinly in the State of Alaska, therefore enforcement works closely with the Alaska Board of Game and the Alaska Department of Fish and Game to ensure that wildlife regulations are reasonable and enforceable in the field. We recognize that we can only catch a small percentage of violations in the field, and depend heavily on voluntary compliance, self reporting, and reports from neighbors and other observers to maintain compliance levels at a level high enough to allow regulatory wildlife management options adopted by the Alaska Board of Game to be successful in ensuring sustained yield.

6. Under Alaska Stat. § 16.05.920(a) (2006), taking and possession of wildlife is prohibited except as specifically permitted by state statute or state regulation; violations are punishable as misdemeanors under Alaska Stat. § 16.05.925 and restitution to the State may also be required.

7. Enforcement of state regulations adopted to carry out the constitutional and statutory responsibilities of the Alaska Board of Game and the Alaska Department of Fish and Game is complicated by the dual management system because a person who is a federally qualified rural resident may take wildlife under federal regulations that would be prohibited under state regulations; thus a violation may not be proven by simple possession of wildlife whose take would be prohibited under State law. Under the dual management system, it becomes necessary to determine whether a hunter taking or possessing wildlife prohibited under state law may legally take or possess the wildlife under federal law; determining whether the wildlife may be taken

*State v. Fleagle*
Case No. 3:06-cv-00107-HRH
Affidavit of Lt. Gary Folger

**Exhibit D**
**Page 2 of 6**

*Page* 2 of 6

under federal law often requires establishing both the place of residence of the person responsible for the taking and the exact place where the wildlife was taken. Determination of the exact place of taking is often not practicable, and observers often do not know whether a person engaged in taking is a rural resident from an area with a positive customary and traditional use determination who is allowed to hunt under federal rules or whether the taking is on federal lands. These difficulties render regulations applicable to state lands virtually unenforceable with regards to federally qualified subsistence users in areas of intermixed state and federal lands. Even in the unlikely event that the precise place of taking can be located, it is often difficult to determine whether the taking was on federal public lands because these lands are not fenced and in most cases do not have marked boundaries of any sort, in many cases such lands are not even well mapped. Even with a precise GPS coordinate, an officer in the field may not know whether a particular point is on federal public lands.

8. Enforcement and compliance with state law is also complicated even in areas where there are no known federal lands by the fact that there are a number of unresolved legal questions regarding whether certain lands, including Native allotments and the surface of frozen water bodies in which the federal government claims to hold a Federal Reserved Water Right are federal public lands. Although the State asserts that such areas are not federal public lands, the federal government has issued no definitive rules on this issue and the issues have not been resolved in court. There are wildlife users who assert that such lands are federal public lands.

9. Every increase in the number of rural residents with a positive customary and traditional use determination for an area for which there are federal regulations different than state regulations makes enforcement more difficult; even relatively small increases have cumulative effects.

*State v. Fleagle*
Case No. 3:06-cv-00107-HRH
Affidavit of Lt. Gary Folger

**Exhibit D**
**Page 3 of 6**            *Page 3 of 6*

10.  The Board's positive customary and traditional use determination for moose for Chistochina residents in all of Unit 12 had the immediate effect of pre-empting state law by making Chistochina residents "federally qualified subsistence users" on any federal public lands in all of Unit 12. It immediately made Chistochina eligible to participate in new federal hunts in violation of state regulations and expanded the area where they could participate in other federal hunts in violation of state regulations. *Compare* 50 C.F.R. § 100.26(n)(12)(2005)) *and* 5 AAC 85.045(10)(2005; Register 172). The Board's determination greatly expanded the area in Unit 12 in which Chistochina residents may assert that game taken in violation of State law was taken subject to federal rules from federal public lands.

11.  During the 2006 – 2007 season, federal and state regulations changed slightly; Chistochina residents remain eligible to participate in federal hunts where they are allowed to take moose in violation of state law. *Compare* 50 C.F.R. § 100.26(n)(12)(2006) *and* 5 AAC 85.045(10)(2006; Register 178).

12.  State enforcement officers have direct access to state hunt participation information and harvest records and reports; access to federal participation information and harvest records and reports is indirect; this can slow down or discourage enforcement efforts.

13.  The expansion of Chistochina's customary and traditional use determination to include all of Unit 12, instead of a small portion of the Unit, has increased the workload of state enforcement officers and made enforcement in any given area more difficult and less likely to occur. Given existing enforcement resources, cumulative effects of such determinations are likely to cause significant impacts on our ability to enforce state regulations. Such reductions in enforcement ability are also likely to lead to decreased voluntary compliance with state regulations.

*State v. Fleagle*
Case No. 3:06-cv-00107-HRH
Affidavit of Lt. Gary Folger

**Exhibit D**
**Page 4 of 6**   Page 4 of 6

14. The Alaska Bureau of Wildlife Enforcement has encountered a number of enforcement issues relating to federal subsistence hunts for moose and caribou in Unit 12 and surrounding units in recent years, and has issued citations for a number of violations including: taking by federal permit holders on state and private lands during state closed seasons, taking of sub-legal animals on state and private lands by federal hunters and, taking of animals by non federally qualified hunters hunting with qualified federal hunters during state closed seasons. In addition our offices have received numerous complaints of hunters failing to validate harvest tickets and returning later to take more animals.

15. Where a federal hunting season opens before the state hunting season or extends beyond a state hunting season as it does in Unit 12, Alaska Bureau of Wildlife Enforcement officers are often required to spend additional time in the field and often receive complaints where hunters are observed hunting during closed state seasons. Not all complaints can be investigated to confirm whether hunters are qualified federal subsistence users with a positive customary and traditional use determination for the area in which they are hunting.

16. Every increase in the number of federally qualified users, whether made through granting additional positive customary and traditional use determinations or expanding the area of existing determinations, makes it more difficult to enforce Alaska's wildlife regulations, even small increases have cumulative effects.

17. As shown above, the State's interests in enforcement of its rules related to management of its moose resource has been and continues to be harmed by the unnecessarily overbroad Chistochina customary and traditional use determination which allows Chistochina residents to take moose at times when take is prohibited under state law and also allows

*State v. Fleagle*
Case No. 3:06-cv-00107-HRH
Affidavit of Lt. Gary Folger

**Exhibit D**
**Page 5 of 6**   *Page* 5 of 6

Chistochina residents to take moose that do not fall within size ranges eligible for harvest under state law.

Further, affiant sayeth naught.

_____   3/12/07
Lt. Gary Folger                Date

SUBSCRIBED AND SWORN TO before me this 12 day of March 2007.

_____
Notary Public, State of Alaska
My commission expires With Office